## W. H. KIMBROUGH v. W. W. BARNETT.

### No. 861. Decided February 5, 1900.

1. **School Superintendent—Office—Action for.**

The position of superintendent of free schools of the city of Houston is an office, and the lawful incumbent has a right to recover it or its emoluments if unlawfully deprived of the benefit. (P. 309.)

2. **Same—State Superintendent—Jurisdiction.**

The superintendent of public instruction for the State has no jurisdiction over the question who is the lawful superintendent of schools in a city which has assumed independent control thereof, nor of who constitute its lawful board of trustees. (P. 309.)

3. **Constitutional Law—School Trustees—Term of Office.**

The Act of March 30, 1899, so far as it relates to the election of trustees for public schools in independent districts and fixes their terms of office, is void,—being in conflict with article 16, section 30, of the Constitution, limiting the duration of offices to two years. (P. 309.)

4. **Office Defined—School Trustee—Position an Office.**

The position of school trustee comes within the definition of an "office" as "the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public;" it is not necessary that there be a salary. (Pp. 310-312.)

5. **Constitutional Law—Legislative Construction.**

Contemporary legislative and judicial determination of the constitutionality of an act, though of value in cases of ambiguity or doubt, can not control where the language of the Constitution is plain and applicable. (Pp. 312, 313.)

6. **Statute—Partial Unconstitutionality Affecting the Whole.**

All parts of the Act of March 30, 1899, are so dependent upon and connected with the provisions giving to school trustees a four years term and providing for alternate elections, that to declare these void renders the entire act ineffectual, and void as a whole. (P. 313.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Harris County.

*Ross & Wood, W. C. Oliver,* and *J. M. Coleman,* for appellant.—The position, or office, of trustee of school districts is not created by the Constitution. Viewed historically, the position of trustees of school districts in Texas has never been considered an office within the meaning of general provisions in the Constitution relating to offices and officers. See reference to School Laws in introductory note to title "Public Education," 2 Batts Stats., p. 647. Report of Superintendent of Public Instruction of Texas for 1873, p. 19.

Article 16, section 30, of the Constitution, is as follows: "The duration of all offices not fixed by this Constitution shall never exceed two years." Article 16, section 1, of the Constitution provides that: "Members of the Legislature, and all officers, before they enter upon the duties of their offices, shall take the following oath or affirmation," etc. Article 3, section 43, of the Constitution, provides that: "The Legis-

lature shall provide by law for the compensation of all officers, servants, agents, and public contractors, not provided for in this Constitution," etc. The above constitutional provisions have been embodied in every Constitution adopted by the State of Texas, and for reference to the provisions, see the articles referred to with notes, in 4 Sayles' Statutes, Annotated Constitutional History, pp. 583, 577, and 521. Section 44 of article 3 of the Constitution of 1876 was placed under the articles entitled "General Provisions" in the previous Constitutions, and the other two sections referred to are in the Constitution of 1876, as well as in all previous Constitutions, under the article entitled "General Provisions." A position that would not be an office within the meaning of one of these provisions, would not be an office within the meaning of the other, and we will give the history of these provisions under (1) Legislative Construction, (2) Executive Construction.

(1) Legislative Construction.—The following acts did not provide any compensation for trustees in school districts: Act of January 31, 1854; 3 Gammel Reprint, 1461 (this being the first general law passed for the creation of a school system); Act November 12, 1866, p. 171; 5 Gammel Reprint, 1088; Act August 30, 1870, p. 113; 6 Gammel Reprint, 287; Act April 30, 1873, p. 84; Act August 16, 1876, p. 199; Sayles' Early Laws, art. 4261. See other laws referred to in said note, 2 Batts Stats., 647, and the laws hereinafter referred to. No law has ever provided compensation for trustees, and the Act of March 30, 1899, provides, in section 3, that "said trustees shall serve without compensation," and see to the same effect articles 4012 and 4019, Revised Statutes. These two articles were originally enacted in 1879 and 1883, respectively.

Acts of 1879, p. 76, section 3. being now article 4007, Revised Statutes, provides a four-year term of office for school trustees in independent districts; also, section 8, being Revised Statutes, article 4012, provides that the trustees shall serve without compensation.

In 1881 the University of Texas was organized, and the regents given an eight-year term of office. Acts of 1881, p. 8, sec. 6; Rev. Stats., art. 3844.

In 1883 a law was passed giving a three-year term of office to school trustees in cities and towns incorporated under the general law, and providing that they should serve without compensation, and providing an oath of office different from that prescribed in the Constitution. Acts of 1883, p. 112, secs. 2, 3; Rev. Stats., arts. 4019, 4020.

In 1889 the charter of Fort Worth provided a different oath for school trustees from the oath for officers as prescribed in the Constitution. Special Laws of 1889, p. 83, sec. 109. Also in 1889 Paris was chartered, and school trustees were given a four-year term of office as provided in Revised Statutes, article 4007. Spec. Laws, 1891, p. 136.

In 1891 Austin was chartered, and the charter provides that the school trustees shall be elected and serve for the term of four years, as prescribed in Revised Statutes, article 4007. Spec. Laws of 1891, p.

119, sec. 117. Also in 1891, charter of Fort Worth was amended so as to give three-year term of office to trustees. Spec. Laws, 1891, p. 15. sec. 109. The above charters contain provisions requiring them to be judicially noticed.

In 1895 the various articles of the Revised Statutes above set out, with three and four-year term of office for trustees, were enacted.

In 1899 the Act of March 30th was passed with four-year tenure for trustees. Gen. Laws, 1899, p. 71. Several other school laws were passed at that session of the Legislature with long terms for trustees.

(2) Executive Construction.—In the report of Hon. J. C. DeGress, Superintendent of Public Instruction, made in accordance with the provisions of the Act of May 22, 1873, entitled "An act to establish and maintain a system of public free schools in Texas" (7 Gammel Reprint, p. 84), we find the following language on p. 19: "The Attorney-General having decided that the position of school trustee is not an office within the meaning of section 1, article 12, of the Constitution, no oath of office is required from them." The Act of 1871 or 1873 did not prescribe any oath of office for school trustees. In the report the ruling is found in Exhibit B, marked "Circular," addressed "To Boards of School Directors, State of Texas." This report was made in accordance with section 3, article 9, of the Constitution of 1869, and section 6, of the said Act of 1873. The ruling in the circular was meant for the instruction of the people throughout the State. The various statutes above mentioned have always been enforced by the executive department until repealed, and they have always been deemed constitutional. Hon O. M. Roberts was Governor in 1879, when article 4007 of the Revised Statutes was originally enacted, and Hon. John Ireland was Governor when the Act of 1883 was passed with a three-year tenure for trustees of schools. Both of these distinguished men had been members of the Supreme Court of Texas, and were eminent as jurists, and their acts as Governor should be shown as much consideration in construing the Constitution as if they had been acting as judges. In his message to the Legislature, in 1899, Senate Journal, p. 24, the Hon. C. A. Culberson said: "If the members of the boards (educational and charitable) are paid actual expenses only, receiving no salary or compensation, they will not be officers within the meaning of section 30, article 16, of the Constitution, which limits the tenure to two years." It is a well known fact that Governor Roberts was an advocate of the long tenure for regents of the University, and in one of his messages to the Legislature, he recommended the passage of a school trustee law with a three-year tenure.

As the Legislature has never allowed any compensation to school trustees, it has either continuously violated the Constitution since 1854, or the position is not an office within the meaning of the constitutional provisions under consideration. Four Constitutions have been adopted since 1854, and no constitutional convention has seen fit to change the legislative and executive construction. Just preceding the adoption of

the Constitution of 1876, the head of the educational department, following the ruling of the Attorney-General, ruled that the position of trustee was not an office within the meaning of section 1, article 12, of the Constitution of 1869, being the same as section 1, article 16, Constitution of 1876. This ruling was given greater publicity, by far, than a judgment of a court would have had in any ordinary case. The Constitution then in force, as now, required "all officers" to take the "constitutional oath." The language of the Supreme Court of Oregon, in Harris v. Burr, 39 Lawyers' Reports Annotated, 768, p. 772, applies so exactly, that we will quote a part of it: "Thus we have direct legislative interpretation of the fundamental law, not only proximately contemporaneous with the adoption of that instrument, but by its every subsequent act whenever it has legislated on the subject. If we ascribe to the constitutional convention cognizance of the laws of Congress and the territorial regulations thereunder touching the common school system, as we must, because of the learning and sagacity of its members, there is strong reason for believing that they legislated fundamentally with reference to the conditions as they found them, especially as we find the Legislature of 1862 [1876 and 1879 in our case] so near the time of the adoption of the Constitution, and composed of some of the same members, revising the school system, and to that end specially repealing acts at least supposed by them to have been carried over, by the very terms of the Constitution itself. These considerations lead us to the conclusion that the power ascribed to the Legislature under the Constitution to provide for the establishment of a uniform and general system of common schools carries with it plenary power to establish the unit of that system, denominated school district, to determine what officers shall administer its affairs, who and what manner of persons shall be eligible to office, and how and by whom they should be chosen."

These constitutional provisions, with reference to compensation, are of the greatest importance in connection with offices contemplated by the Constitution, for, by attaching a reasonable compensation to the ordinary office, much of the incentive to dishonesty on the part of the officer is removed, and better incumbents are secured. But with the position of school trustee the conditions are quite different. The duties do not require all, or a very large portion of the time of the trustee in their discharge. The absence of an emolument does not militate against securing the services of the best and most enlightened men in the community for school trustees, but is conducive to that end. This shows a broad line of demarkation between the position of school trustees as organized under the statutes, and offices as contemplated by the Constitution.

The common and popular idea of an office is, that it has an emolument, and evidently the word was used in this sense in the Constitution, for it requires a compensation to be provided for all officers. Kinney v. Zimpelman, 36 Texas, 554; United States v. Hartwell, 6 Wall., 385.

Never in the history of this or any other State has it been customary

to provide compensation for school trustees, and it has never been understood, before or since the adoption of the Constitution of 1876, that the Constitution of this State required that it should be done.

It is clear that the Constitution was written with a view to the regulation of lucrative political offices, and did not contemplate changing the custom of the country with reference to school trustees. It left this matter, as had always been done, with the Legislature; did more, imposed upon the Legislature the duty to create and regulate a system of schools, and, to borrow a phrase of Governor Culberson, there is "no civic theory" that requires school trustees to be brought under these provisions of the Constitution.

It is said by the trial court, that as the trustees have their duties defined by law, and exercise a part of the sovereign power of the State, they are officers within the meaning of these provisions in the Constitution. But a "clergyman, in the administration of marriage, is a public civil officer, and in relation to this subject, is not at all distinguishable from a judge of the superior or county court, or a justice of the peace, in the performance of the same duty." Goshen v. Stonington, 4 Conn., 209. A guardian, an administrator, a receiver, each exercises a part of the sovereign power of the State, and each has his duties prescribed by law, receives compensation, and by law is required to give bond and take an oath of office. No one would say, by reason of these facts, that these offices are within the meaning of these provisions of the Constitution. Yet the duty performed in taking and administering one's property against his consent, of fixing his status with reference to marriage, is as truly the exercise of a part of sovereignty as anything done by school trustees—at least a debtor thinks so when his property is taken from him and disposed of for his creditors.

The authority granted by the Constitution to the Legislature to establish a common or primary school system, carried with it the authority to prescribe what officers should be chosen to conduct the affairs of the school districts, to define their powers and duties, their term of office, and how and by whom they should be chosen. Const. 1876, sec. 1, art. 7; Const. 1845, art. 10, sec. 1; 1861, art. 10, sec. 1; 1866, art. 10, sec. 1; 1869, art. 9, secs. 1-9; Belles v. Burr, 76 Mich., 6; Harris v. Burr (Ore.), 39 Law. Rep. Ann., 768; Plummer v. Yost, 144 Ill., 68; In re Gage, 141 N. Y., 112; State v. Cones, 15 Neb., 444; Wheeler v. Brady, 15 Kan., 26.

The long legislative and executive and popular construction that school trustees are not officers within the meaning of the sections of the Constitution under consideration, should be conclusive that the long tenure does not make the Act of March 30, 1899, void. City of Dallas v. Peacock, 89 Texas, 62; 6 Am. and Eng. Enc. of Law, 931, 932; 1 Rose, Notes on U. S. Reports, 580; Cool. Const. Lim., 6 ed., 81 to 86; Stuart v. Laird, 1 Cranch, 299; Black on Interp. of Laws, secs. 89, 90; Black on Const. Law, sec. 29.

Office, as used in section 30, article 16, of the Constitution, was meant to include an office proper only, and not a trustee of a purely public trust, such as a school trustee, under the act in question.

Every intendment is in favor of the constitutionality of a law, and it should not be held unconstitutional unless it is unconstitutional beyond a reasonable doubt. Powell v. Pennsylvania, 127 U. S., 684; Waters-Pierce Oil Co. v. State, 44 S. W. Rep., 943.

That portion of the act which defines the duties of trustees in independent school districts with reference to the control and management of schools, and especially section 8 of the act providing for the election of a superintendent of schools, is severable from the portion of the act relating to the election and tenure of the trustees.

If the four-year tenure provided for in the act is void, the time may be reduced to two years under the Constitution, and the act given effect with a two-year tenure for the trustees. Commissioners v. George, 47 S. W. Rep., 779; State v. Long, 52 Pac. Rep., 645.

The position of superintendent of the public schools of Houston is one of employment, and not an office. Trustees v. City of Sherman, 91 Texas, 188; State v. Vickers, 58 Ohio St., 730; Freeman v. Bourne, 170 Mass., 289; 21 Am. and Eng. Enc. of Law, 821; Davis v. School Dist., 81 Mich., 214; Adams v. Thomas, 12 S. W. Rep., 940; Gates v. School Dist., 53 Ark., 468; Reubelt v. Noblesville, 106 Ind., 478.

The position of superintendent of schools being one of employment, the trial court should not have entertained the suit of appellee for the place, but should have dismissed the same, as it is useless to entertain a suit of one employe against another for his position, or employment.

The public school law of the State of Texas is a complete system in itself, that provides adequate remedies for any infraction of its integrity, and provides speedy and perfect cure for any and all irregularities, and by imperative implication excludes the interference of the judiciary until the school law remedies have been invoked and failed in their efficacy. Const. 1876, art. 8, secs. 1, 8; Sayles' Stats. (1897), arts. 2938a, 2938b, 2938d, 3921; Nance v. Johnson, 84 Texas, 401; Cochran v. Patillo, 41 S. W. Rep., 537; Burrell v. Blanchard, 51 S. W. Rep., 46; Harkness v. Hutcherson, 90 Texas, 383; Town of Pearsall v. Woolls, 50 S. W. Rep., 959; Thompson v. Board of Education, 31 Atl. Rep., 168; Carpenter v. Independent Dist., 63 N. W. Rep., 708; State v. Albertson (N. J.), 22 Atl. Rep., 1083.

The decision of the State Superintendent of Public Instruction, or State Board of Education, upon matters within their authority, is as conclusive as the judgment of any other tribunal. Same authorities; also Keenan v. Perry, 24 Texas, 253; Hill v. Collins, 34 How. Pr. (N. Y.), 336; Newby v. Free, 72 Iowa, 379; State v. Albertson, 22 Atl. Rep., 1083.

*Fisher, Sears & Sherwood* and *John S. Stewart,* for appellee.—The Act of March 30, 1899, relating to school trustees, is unconstitutional

and void, because the term of office of the trustees provided for therein is fixed at more than two years, which is in violation of section 30, article 16, of the Constitution of Texas, which provides that "the duration of all offices not fixed by this Constitution shall never exceed two years." See "Trustee Act," 26th Leg., p. 71; State v. Catlin, 84 Texas, 52; Hendricks v. State, 49 S. W. Rep., 705; Ogden v. Raymond, 22 Conn., 379.

As the Act of March 30, 1899, is unconstitutional in providing for terms of office longer than two years, it can not be enforced in any part.

The State Superintendent of Education is an administrative officer, but has no judicial powers. He can not directly or indirectly adjudicate the title to an office, and his letters of advice as to what he construes a law to mean have no force as judgments depriving one man of an office and vesting another with title to it, and this especially where the contending parties are given no chance to be heard.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the First Supreme Judicial District has certified to this court the following statement and questions:

"Upon August 21, 1899, W. W. Barnett brought suit in the District Court of Harris County for the Fifty-fifth Judicial District against W. H. Kimbrough for the office or position of superintendent of the public schools of the city of Houston. Barnett recovered judgment October 2, 1899, for the office and its emoluments, and Kimbrough has appealed.

"The contest arose out of the construction of an act of the Twenty-sixth Legislature concerning school trustees of independent districts, being chapter 51 of the general laws of that body, approved March 30, 1899. Barnett claims that the law in question does not apply to the city of Houston; or that if it does apply, its provision as to the election of trustees does not go into effect until the year 1901, and that he is entitled to the office by reason of (1) his nomination thereto by the mayor and confirmation by the city council, and (2) his election thereto by a majority of the legally constituted board of public school trustees of the city of Houston. Kimbrough claims that the law does apply, and that he was regularly elected superintendent of the public schools by the board of trustees lawfully constituted under the Act of March 30, 1899. There were two bodies, each claiming to be the legal board of public school trustees of the city of Houston. The questions in the case arise upon the constitutionality and construction of the Act of March 30, 1899, above referred to.

"The city of Houston assumed exclusive control of the public free schools within its limits on December 5, 1876, by virtue of an election held under the school law of 1876. and when the law of March 30, 1899, went into effect it was conducting its schools in accordance with its charter and the law applicable to such control, and had been so conducting them ever since December 5, 1876. After the passage of the

Act of March 30, 1899, a difference of opinion arose in the board of trustees as to the construction of the law, which resulted in the formation of two boards, one of which elected Kimbrough and the other Barnett as superintendent of the schools. At the date of the passage of the act, the board was composed of the following members, to wit: J. R. Cade, C. P. Bloxsom, Fred Fenwick, Rufus Cage, and James Charlton, also S. H. Brashear, mayor of the city of Houston, as ex officio member. On April 17, 1899, Henry F. Fisher was appointed by the mayor and confirmed by the city council as a trustee in the place of Rufus Cage, and the board as thus constituted continued to act without objection until July 4, 1899, when it met, and the question of electing a superintendent for the public schools having come up, it appeared that Cade, Shearn, Bloxsom, and Fenwick were in favor of retaining Kimbrough, who was the incumbent, and Brashear, Charlton, and Fisher were in favor of electing Barnett. The board adjourned without an election. Cage, Shearn, and Cade had been appointed as members of the board by the mayor and confirmed by the council on May 17, 1897; Charlton, Bloxsom, and Fenwick were thus appointed and confirmed June 6, 1898. The term of office of trustees was two years under the law as it existed when the Act of March 30, 1899, was passed. At the meeting of the city council July 10, 1899, the mayor, S. H. Brashear, nominated as trustees ·the public schools Andrew Dow and George Jones, who were confirmed by the city council. A majority of the board thus constituted by the appointment of Dow and Jones in lieu of Shearn and Cade, to wit, Charlton, Fisher, Dow, and Jones, with whom acted Brashear, met on July 13, 1899, and elected the appellee as superintendent of the public schools of the city; and afterwards, on July 17, 1899, the appellee was appointed by the mayor and confirmed by the city council as such superintendent for the term of two years. The trustees Shearn and Cade did not resign their offices, but, acting with Bloxsom and Fenwick, on July 14, 1899, organized with Shearn as president and elected the appellant Kimbrough as superintendent for the ensuing two years. Prior to the passage of the Act of March 30, 1899, the school superintendent was required by the charter to be appointed by the mayor and confirmed by the council. The salary attached to the position is $2500. Kimbrough had been duly appointed superintendent and was acting as such at the time of his election, and was elected at the expiration of the term for which he had been appointed. On July 19, 1899, the Shearn board brought a suit in the District Court of Harris County for the Eleventh Judicial District against the Brashear board and Barnett for an injunction, and a temporary order was granted restraining them from interfering with the plaintiffs in the management of the schools or school property and restraining them from acting as trustees and superintendent respectively. That suit is still pending and the temporary restraining order is still in force.

"Out of the foregoing facts, the following questions of law arise which are certified to the Supreme Court for decision:

"1. Is the position of superintendent of the public schools of the city of Houston an office for which a suit may be maintained in the district court?

"2. Was it necessary for the plaintiff to submit his contention to .the State Superintendent of Public Instruction or the State Board of Education before he could maintain this suit?

"3. Does chapter 51 of the General Laws of the Twenty-sixth Legislature concerning school trustees and independent districts, approved March 30, 1899, apply to the control of the public schools of the city of Houston?

"4. Did said act in its application to the city of Houston, if it applies, take effect with respect to the election or appointment of school trustees on March 30, 1899? What action in accordance with said act was required with respect to the election or appointment of public school trustees for the city of Houston? Was the mayor ex officio a member of the board of trustees after March 30, 1899?

"5. Is said act of the Legislature constitutional with respect to the term of office fixed by it for public school trustees? If not, does its want of constitutionality in this respect invalidate the entire law?

"6. Were conflicting provisions of the charter of the city of Houston repealed by the said Act of March 30, 1899?

"7. Does the provision for the appointment of school superintendent by the mayor in section 7 of the charter of the city of Houston apply only to the first appointment after the grant of the power? Does the charter empower the board of trustees to make subsequent appointments?"

We answer the first question in the affirmative. The position of superintendent of the free schools in the city of Houston is an office, and the lawful incumbent of it would have a right of action to recover it or its emoluments in case he was unlawfully deprived of the benefit. State v. Catlin, 84 Texas, 48.

The Superintendent of Public Education for the State has no jurisdiction of the questions involved in this case, and it was not necessary for the plaintiff below to present his claim to the office to the Superintendent before bringing suit.

Under question 5, we will answer all the other questions that we deem necessary. The Act of March 30, 1899, in so far as it relates to the election of trustees for public schools in independent school districts and fixes the term of office of such trustees, is void, being in conflict with article 16, section 30, of the Constitution, which reads as follows: "The duration of all offices not fixed by this Constitution shall never exceed two years; provided, that when a railroad commission is created by law, it shall be composed of three commissioners, who shall be elected by the people at a general election for State officers, and their terms of office shall be six years; provided, railroad commissioners first

elected after this amendment goes into effect shall hold office as follows: One shall serve two years, and one four years, and one six years, their terms to be decided by lot, immediately after they shall have qualified. And one railroad commissioner shall be elected every two years thereafter. In case of vacancy in said office, the Governor of the State shall fill said vacancy by appointment until the next general election."

It is not denied that the position of trustee of a free school in an independent district is, in a sense, an office, but it is claimed that it does not come within the meaning of the word "office," as used in the section of the Constitution above quoted. The term "office" is defined by Mr. Mechem, in his work on Public Officers, thus: "Public office is the right, authority, and duty created and conferred by law by which, for a given period either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public." The correctness of this definition is nowhere questioned, so far as we know, and it is useless to add supporting authorities.

In order to determine if the school trustees in independent districts are officers, we will enumerate some of their powers. The law authorizes and empowers such trustees, (1) to adopt rules, regulations, and by-laws; (2) to select the chairman, secretary, treasurer, and other officers necessary for the discharge of their duties; (3) to exercise exclusive control over the management of the free schools within their district; (4) to hold title to the property belonging to such free schools within their district and to exercise exclusive possession and control over it; (5) to sue and be sued with regard to such property; (6) to employ teachers and disburse the school fund belonging to the district whether derived from the State or by special taxation; (7) their duties are all derived from the law itself and not by contract, and the terms of office are fixed by the statutes. Every essential element of an office is embraced in the powers conferred; besides, many powers are vested in trustees which are not necessary to constitute an office. Indeed, the authority conferred is broad in its scope, ample in its adaptation to the performance of the duties enjoined, and largely independent of the control of others. No salary or compensation is given, but that is not necessary to make the employment an "office." We think there can be no doubt that a school trustee of an independent school district in this State is a county officer, as was held in the case of Hendricks v. State, 20 Texas Civil Appeals, 178. It is urged by the appellant's counsel that the position of trustee, if an office, is not embraced in the meaning of section 30, article 16, of the Constitution.

To support this contention, it is conceded that an office of a municipal corporation comes within the letter and spirit of the constitutional limitation as was held in the case of State v. Catlin, before cited, but it is claimed that there is a difference between the power exercised by

the Legislature in carrying into effect the following constitutional provisions: "A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools," (Constitution, article 7, section 1), by the creation of school districts and the authority by which that body may create a municipal corporation. Appellant strenuously urges that the former provision commits to the Legislature authority to create such offices as it may deem fit and confer upon them any length of term without regard to the limitation of the Constitution before cited. To support this contention, the appellant cites Wheeler v. Brady, 15 Kansas, 26; State v. Cones, 15 Nebraska, 444; Belles v. Burr, 76 Michigan, 1. Each of these cases involves the question of the right of a female to vote at an election for school trustee. In neither is the official character of the school trustee involved. In Wheeler v. Brady, 15 Kansas, 26, the Supreme Court held that an election for school trustee did not come within the terms of the Constitution of that State which prescribes the qualifications for voters at elections. The clause of the Constitution which prescribes the qualifications of voters is not copied in that opinion, but it is said that the Constitution provides "that all officers whose election or appointment is not provided for in the Constitution shall be elected or appointed as prescribed by law." The court held that this authorized the Legislature to extend suffrage at such elections beyond the constitutional provision.

The Supreme Court of Nebraska does not give the terms of the Constitution under construction, and we are not able to pass upon the applicability of that decision to the facts of this case; but the court does say that the election of school trustees is not embraced in the provisions of their Constitution.

The Supreme Court of the State of Michigan, in the case of Belles v. Burr, 76 Michigan, 1, held that a provision of their Constitution which provided that in "all elections" males of a given age, possessing certain other qualifications, should be qualified voters, was intended to apply only to such elections as were provided for by the Constitution itself and did not control the Legislature in regard to elections not mentioned therein. Judge Campbell, one of the ablest judges who has graced the bench of that State, dissented from that decision.

If, however, we concede for the sake of the argument that the cases cited were rightly determined, they do not furnish support for the contention of appellant in this case. The convention which framed our Constitution named the principal officers who were to discharge the functions of government for the State and counties and some subdivisions of counties, and to each named office from Governor to constable, except notary public, fixed a term for which it should be held. The terms range from six years for the appellate courts and railroad commissioners down to two years for almost every other office. It is

manifest that the convention did not desire nor intend that public servants of this State should hold their offices for a great length of time, but it was the policy of that body that they should return to the power under which they received their authority for its renewal at short intervals, and, having applied this rule to all the offices named by them, save the one, it placed a limitation upon the action of the Legislature as to such offices as it might create. There was no office created by the Constitution to which the limitation could apply, and it therefore must be held that it was designed to apply to such as might be created by the legislative department in the execution of its powers. This view is sustained by the case of State v. Catlin, before cited, for it is just as true of municipal corporations that the offices to be created for the discharge of municipal duties are not named in the Constitution as it is of the free schools. But it is insisted with earnestness and with apparent confidence that the authority exercised by the Legislature in the creation of the office of school trustees is different from that which creates the office of secretary, alderman, or other position of a city. The distinction, if it exists, is too fine for our perception. We are not able to grasp it. All authority of the Legislature is derived from the same source,—the people. It is sovereign power, exercised by the same department, although applied to different subjects. The duties to be performed by both municipal and school officers relate to the public interest, and we are wholly unable to see how there can be any such distinction as that which has been urged with so much earnestness and with no little force.

In support of this last contention, it was pressed upon this court that the construction which has been placed upon the Constitution by the legislative department of the government as well as by those who have been charged with the execution of the laws on the subject of public education should control and enforce upon us a construction which is at variance with the plain, unambiguous letter of that instrument. We recognize the value of contemporaneous construction and the propriety of following it in all cases where there is ambiguity or doubt as to the meaning of the Constitution; but we must insist that it is not within the province of this court, in deference to the construction of another department, to set aside the Constitution, framed by the people of this State. Such a rule would set the Legislature above the people and above their convention, and to sustain it the courts, instead of construing and enforcing the provisions of the Constitution, must seek methods for evading its limitations and denying the binding force of its mandates.

Upon the force to be given by courts to contemporaneous construction, Mr. Cooley, in his work on Constitutional Limitations, says: "Great deference has been paid in all cases to the action of the executive department, where its officers have been called upon, under the responsibilities of their official oaths, to inaugurate a new system, and where it is to be presumed they have carefully and conscientiously

weighed all considerations, and endeavored to keep within the letter and the spirit of the Constitution. If the question involved is really one of doubt, the force of their judgment, especially in view of the injurious consequences that may result from disregarding it, is fairly entitled to turn the scale in the judicial mind.

"Where, however, no ambiguity or doubt appears in the law, we think the same rule obtains here as in other cases, that the court should confine its attention to the law, and not allow extrinsic circumstances to introduce a difficulty where the language is plain. To allow force to a practical construction in such a case would be to suffer manifest perversions to defeat the evident purpose of the lawmakers. 'Contemporary construction * * * can never abrogate the text; it can never fritter away its obvious sense; it can never narrow down its true limitations; it can never enlarge·its natural boundaries.'" The duties of a court, under such circumstances as surround this case, are clearly and fairly stated·in the quotation. Regretting, as we do, the inconveniences that may follow our decision, we must nevertheless halt at the boundary line between fair construction and judicial legislation and decline to write into the fundamental law an exception at variance with its plain terms; the people must make the change, if it be changed.

The provisions of the act giving four years' term to the trustees and those providing for alternate elections are the heart of the act in question. All other parts are so dependent upon and connected with those that to declare the former void renders the act ineffectual for the accomplishment of the purpose which induced its enactment. The Legislature evidently would not have passed the law without the void provisions, and we must hold the law void as a whole. Telegraph Co. v. State, 62 Texas, 630.