

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable N. B. Bailey
District Attorney
Box 772
Center, Texas

Dear Mr. Bailey:

                    Opinion No. O-5341
                    Re:   Whether or not a District
                          Attorney may be paid compensation
                          while holding at the same time the
                          position of County Chapter Chair-
                          man of The American Red Cross.

          You request an opinion from this department
upon the following question:

          "Recently I was elected Chapter Chairman of
the Shelby County Chapter, American Red Cross. I am
also the duly elected and qualified District Attorney.
My question is, can I serve in both capacities, in view
of the recent opinion of the Attorney General?"

          The following may be accepted as a correct
statement of the creation and authority of The American
National Red Cross, since it is approved by Hon. Norman H.
Davis, National Chairman:

          "Creation and Authority.— The American
National Red Cross is chartered under the act of Con-
gress approved January 5, 1905 (33 Stat. 599; 36 U.S.C.1),
as amended by the act approved February 27, 1917 (39 Stat.
946; 36 U.S.C. 6).

          "Purpose.— The purposes of The American
National Red Cross are to furnish volunteer aid to the
sick and wounded of armies in time of war, to perform
all duties with which the national society of each nation

Honorable N. B. Bailey, page 2

acceding to the Treaty of Geneva is charged, to act
in matters of voluntary relief, and to serve, in
accord with military and naval authorities, as a
medium of communication between the people of the
United States and their Army and Navy. It is further
charged with providing a system of national and inter-
national relief to mitigate the suffering caused by
pestilence, famine, fire, flood, and other great
national calamities, and to devise measures for
their prevention.

"Organization.— The incorporators who are
named in the Act of Incorporation, and their successors,
constitute a permanent body. They elect six members
of the Central Committee and the members of the Board
of Trustees of the Endowment Fund.

"The officers are a president (the President
of the United States is president upon his acceptance
of the office) and the following elective officers:
three vice presidents, a counselor, a treasurer, and
a secretary, all of whom are elected by the Central
Committee. The chairman of the Central Committee is
appointed by the President of the United States. The
vice chairmen are appointed by the Central Committee.

"The Central Committee consists of 18 members,
6 appointed by the President of the United States,
6 elected by the incorporators, and 6 elected by the
delegates of the chapters. Elected members serve for
3 years. The Congressional Charter vests in the Central
Committee the entire control, management, and adminis-
tration of the affairs of The American National Red
Cross. The Central Committee appoints a 9-member execu-
tive committee, 5 members of which constitute a quorum.
The Executive Committee may exercise all powers of the
Central Committee when that body is not in session.
One chairman serves both committees and, under the advice
and direction of the Central Committee, is executive head
of the corporation. Under the chairman are 4 vice chair-
men, in charge of domestic operations, finance, insular
and foreign operations, and the Junior Red Cross.

Honorable N. B. Bailey, page 3

"The chapter, usually covering a single county, is the local unit of the Red Cross and is responsible for all Red Cross activities and services within its territory, subject to the policies and regulations of the national organization." (U. S.Government Manual, Fall 1942, Bureau of Public Inquiries of the Office of War Information, page 558)

Its farflung activities, without going into detail under each head, may be grouped as follows: First, service to the armed forces; second, civilian war aid; third, disaster relief; fourth, blood donor service; fifth, nursing service; sixth, nutrition; seventh, first aid, water safety and accident prevention; eighth, volunteer special service; ninth, American Junior Red Cross; and tenth, International Red Cross.

The pertinent provision of our Constitution necessary for us to consider in answering your question is Section 33 of Article XVI, reading as follows:

"The accounting officers of this State shall neither draw nor pay a warrant upon the treasury in favor of any person, for salary or compensation as agent, officer or appointee, who holds at the same time any other office or position of honor, _trust_ or _profit_, under this State or the United States, except, . . ." (Emphasis ours)

Simply stated, the question is: Is the chairmanship of the local chapter of The American National Red Cross an office or position of _honor_, _trust_ or _profit_ under the United States? For the reasons hereafter fully set out we think the answer is in the negative.

It is true that The American National Red Cross is by the terms of its Congressional Charter subject to some quasi-governmental (Federal) supervision in that its accounts are audited by the War Department; the Central Committee, in which is vested entire control of its affairs under its charter, makes an annual report to the Congress of the United States. However, this by no means constitutes the chairman of a local chapter an _officer_ or holder of a _position under the United States_. The American National Red Cross is, as noted above, supported by voluntary contributions. Its funds are not

Honorable H. B. Bailey, page 4

deposited in the United States Treasury, but in depositories selected by the Central Committee — the exclusive governing body, disbursed exclusively by officials of the corporation, and not by any official of the United States or by virtue of any law or direction of the Congress of the United States. Its paid employees are paid by the corporation, not by the United States; they are not subject to civil service; and are not responsible to any official of the United States.

We will not take time to consider whether or not the local chairmanship of a chapter of The American National Red Cross is an office or position. We will assume, without concluding, that it is an office or position, and concede, without argument, that if it is an office or position, it is one of honor or trust. In no event is it one of profit, hence this thought is dismissed to have it out of the way. But is such chairmanship an office or position under the United States in the purview of the meaning of that term as used in the above provision of our Constitution? Unless it is an office or position of honor or trust under the United States, such chairman of a local chapter may at the same time draw his salary as district attorney for the obvious reason that the Comptroller is only forbidden to issue his warrant in case he holds at the same time an office or position of honor, trust, or profit under the United States.

This brings us to consider more in detail what is an office or position under the United States. We do not deem it necessary to analize the fine distinction that may sometimes exist between an office and a position. The office or position must be under the express language of the Constitution under the United States in order to constitute a disqualification from at the same time receiving his salary from the State as a State Officer, in your case that of District Attorney. In other words, whatever significance should be attached to the term "position", as distinguished from "office", as used in our Constitution, is not material unless by force of the distinction that one is under the United States and the other is not. The plain language of the Constitution precludes this construction.

As used in our Constitution, "office under the United States" means that the holder thereof must exercise some governmental function, or be the depository of some sovereignty of the United States (Federal Government) before it rises to the dignity of an "office" under the United States. There must

Honorable N. B. Bailey, page 5

be delegated to the person holding such "office" some of the sovereign functions of the United States Government. There are several persuasive, though not conclusive, characteristics of what constitutes a public office; or to express it in another way, what constitutes holding an "office under the United States". We mention a few: Tenure and duration, oath of office, official bond, etc. But one indispensable characteristic, as the cases hereafter noted affirm, is that the duties performed shall involve the exercise of sovereign power, whether great or small. Our own Supreme Court, in a comparatively early case, Kimbrough v. Barnett, 93 Texas 301, 55 S. W. 120, quoted with approval Mechem on Public Officers, as follows:

> "A public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public."

In the case of Garrett v. Commissioners Court of Limestone County, 230 S. W. 1010, by the Dallas Court of Civil Appeals, we find:

> "The term 'office' implies a delegation of a portion of the sovereign power to, and possession of, it by the person filling the office; a public office being an agency for the state, and the person whose duty it is to perform the agency being a public officer. The term embraces the idea of tenure, duration, emolument and duties, and has respect to a permanent public trust to be exercised in behalf of government, and not to a merely transient, occasional or incidental employment. A person in the service of the government who derives his position from a duly and legally authorized election or appointment, whose duties are continuous in their nature and defined by rules prescribed by government, and not by contract, consisting of the exercise of important public powers, trusts, or duties, as a part of the regular administration of government, the place and the duties remaining, though the incumbent dies or is changed, every office in the constitutional meaning of the term implying an authority to exercise some portion of the sovereign power, either in making, executing or administering the laws.' Mechem on Public Officers, § 1-9."

Honorable N. B. Bailey, page 6

A few cases from other jurisdictions are noted. What constitutes an "office" or "position" under the State or United States has many times been before our courts. In the case of United States v. David Mouat, 124 U. S. 465, 81 L. Ed. 463, the Supreme Court of the United States, by Justice Miller, said:

"What is necessary to constitute a person an officer of the United States, in any of the various branches of its service, has been very fully considered by this court in United States v. Germaine, 99 U. S. 508. In that case it was distinctly pointed out that, under the Constitution of the United States, all its officers were appointed by the President, by and with the consent of the Senate, or by a court of law, or the head of a department; and the heads of the departments were defined in that opinion to be what are now called the members of the cabinet. Unless a person in the service of the Government, therefore, holds his place by virtue of an appointment by the President, or of one of the courts of justice or heads of departments authorized by law to make such an appointment, he is not, strictly speaking, an officer of the United States."

In an early case, People ex rel Attorney General v. Leonard, 14 P. 853, the Supreme Court of California had occasion under the facts of that case to consider what constitutes an office under the United States. The Constitution of California has in it the following provision:

"No person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under this state: provided that officers in the militia, who receive no annual salary, local officers, or postmasters whose compensation does not exceed $500 per annum, shall not be deemed to hold lucrative offices."

The court said:

". . . The words 'lucrative office,' as used in that section, refer solely to the office 'under the United States,' — the federal office. . . ." (Emphasis supplied)

Honorable N. B. Bailey, page 7

In other words the office under the United States is the <u>Federal office.</u>

The Supreme Court of Wisconsin had a case we consider quite in point: In Re Doe's Estate. In Re Wheeler. Mallory, as Public Adm'r. v. Wheeler, 138 N. W. 97, in which application was made by the Public Administrator for administration upon the estate of John Doe (alias), deceased. John Doe was an inmate of the National Home for Disabled Volunteer Soldiers. The National Home was incorporated by Congress, as is The American National Red Cross. Roy Wheeler was the Governor of said home. Demand was made upon him to produce in the state court, having jurisdiction of estates, certain personal effects of John Doe (alias), which the Public Administrator considered necessary in the orderly administration of said estate. Answer was made upon the part of Wheeler, as Governor of the National Home, that he was an officer of the United States and could not be called upon to answer under state law for his acts and doings; furthermore, that management of property and effects of deceased soldiers, inmates of the National Home, is exclusively under the control of Congress and its Board of Managers, under Federal Statutes, rules and regulations made pursuant thereto. The court, in passing upon the question, said:

". . . Wheeler was not an officer of the United States. As a general rule, an officer of the United States is one who holds his place by virtue of appointment by the President, by one of the courts of justice, or by the heads of departments authorized by law to make such appointment. 3 Cyc. p. 618; United States v. Mouat, 124 U. S. 303, 8 Sup. Ct. 505, 31 L. Ed. 463; United States v. Germaine, 99 U. S. 508, 25 L. Ed. 482; Babbitt v. United States, 16 Ct. Cl. 202; Wood v. United States, 15 Ct. Cl. 151. Gov. Wheeler does not derive his appointment from the President, from any court of justice, or any head of the federal departments authorized by law to make such appointment. He is appointed by the board of managers as the local manager or governor of the corporation in question. He reports to the board of managers, and the board of managers annually reports to Congress."

Honorable N. B. Bailey, page 8

In the case of Patton v. Miller, 8 S. W. (2d) 757, the Supreme Court of Georgia, in passing upon the eligibility of a member of the Highway Board of that state to serve at the same time as a member of the Advisory Committee of the Atlanta Agency of the Reconstruction Finance Corporation, said:

"As to ineligibility because of holding a Federal office, the Code provides as follows: 'The following persons are held and deemed ineligible to hold any civil office, and the existence of any of the following states of facts shall be a sufficient reason for vacating any office held by such person, but the acts of such person, while holding a commission, shall be valid as the acts of an officer de facto, viz.: * * * 4. Persons holding any office of profit or trust under the Government of the United States (other than that of postmaster and officers of the Reserve Corps of the United States Army, Navy, or Marine Corps), or of either of the several States, or of any foreign State.'"

The court further said:

". . . The alleged office of 'a member of the Advisory Committee of the Atlanta Agency of the Reconstruction Finance Corporation' is not an office of profit or trust under the Government of the United States, within the meaning of the Code, section 89-101 (4). The Reconstruction Finance Corporation is a governmental corporation, created by Congress, but it is not the government (Cf. Keifer & Keifer v. Reconstruction Finance Corporation, 306 U. S. 381, 383, 59 S. Ct. 516, 83 L. Ed. 784); and it has been held that membership in one of its advisory committees is not an office of trust or profit under the Government of the United States. Kingston Associates v. La Guardia, 156 Misc. 116, 281 N.Y.S. 390."

Honorable N. B. Bailey, page 9

The following is from the case of Hartigon v. Board of Regents of West Virginia University, (Supreme Court of W. V.) 38 S. E. 698:

". . . It at once struck me, in reading the wilderness of law upon the simple but difficult question, what is a public office? that the requirement to make one a public officer he should exercise something that can fitly be called a part of the sovereignty was a test. This test is approved as an important or chief one in State v. Jennings, 57 Ohio St. 415, 49 N. E. 404, 63 Am. St. Rep. 723. It is stated to be the true test in Eliason v. Coleman, 86 N. C. 235. It has been often approved as a strong index. High, Extr. Rem. |625; Doyle v. Alderman, etc., 89 N. C. 133, 45 Am. Rep. 677; Opinion of Judges, 3 Greenl. 477; U. S. v. Lockwood, 1 Pin. 359; State v. Valle, 41 Mo. 31; State v. Hooker, 39 Fla. 477, 22 South. 721, 63 Am. St. Rep. 174. . . ."

In the case of Kingston Associates v. La Guardia, 281 N. Y. Supp. 390, a taxpayer sued to declare the office of Mayor of the City of New York vacant under a provision of the charter of that city, which provides in effect as follows:

". . . 'Any person holding office, whether by election or appointment, who shall, during his term of office, accept, hold, or retain any other civil office of honor, trust, or emolument under the government of the United States,* * * or of the state, * * * or who shall hold or accept any other office connected with the government of The City of New York, or who shall accept a seat in the legislature, shall be deemed thereby to have vacated any office held by him under the city government.' "

It was contended that because Mayor La Guardia had accepted membership on the Advisory Committee on Allotments, created by executive order of the President of the United States to aid in administering emergency relief appropriations, he had under the terms of the above provision of the charter of the City of New York vacated his office as Mayor. This case discusses at length the necessary prerequisites of a public office, but we deem it sufficient if we note the following:

Honorable N. B. Bailey, page 10

"Clearly, the members of the Advisory Committee on Allotments possess none of the powers of the sovereign. They perform no independent governmental function. Such function in general is either legislative, judicial, or executive. It is too plain to require discussion that the Advisory Committee exercises no legislative or judicial prerogatives. It appears to be fairly evident that it likewise possesses no powers of the executive. . . . The committee thus lacks the most important characteristic or attribute associated with the idea of public office, namely, the right to exercise some part of the power of the sovereign."

The court, in Hirschfeld v. Commonwealth ex rel Attorney General, 76 S. W. (2d) 47, (Court of Appeals, Ky.) quoted with approval the following statement from the case of State ex rel. v. Hawkins, 257 P. 411, 53 A. L. R. 383, (Supreme Court of Montana):

". . . 'It (the public position) must possess a delegation of a portion of the sovereign power of government, to be exercised (by the incumbent) for the benefit of the public.' Later in the opinion, in stating our final conclusion from the cases and authorities therein referred to, we said: 'It will be perceived, and which we are convinced is true, that a public service position, in order to be an office so as to make its incumbent an officer, must be created by the Constitution, or the Legislature or a municipality under authority conferred by the Legislature. It must possess or contain a delegation of a portion of the sovereign power of the government to be exercised by the incumbent for the benefit of the public, and the powers and duties must be defined by the authority creating the position, and must be performed by the incumbent independently and without control of any superior public power or authority other than that contained in the law creating the position.'"

We come now to apply more definitely the general rules gathered from the above decisions to the present inquiry, which we will do in the light of the recognized rule, well stated in the case of People ex rel. Attorney General v. Leonard, supra:

Honorable N. B. Bailey, page 11

> "In seeking to interpret the meaning of a
> constitutional provision, it is proper always that the
> intent of the framers of such an instrument should, if
> possible, be ascertained and carried out. . . ."

Applying this rule to the provisions of our
own Constitution with which we are here concerned, it is
obvious that the main object must have been to prevent a
junction of a Federal and State office of honor, trust or
profit in the same person, and thus bring about an undesir-
able condition of divided loyalty and allegiance. To what
extent, we ask, are the duties and responsibilities of the
office of District Attorney in conflict with and incompatible
to the duties and obligations of the chairman of the local
chapter of The American National Red Cross? The answer, we
think, is none. It is true that under the common law only
incompatibility was a bar to dual office holding, and we
think it may be correctly said that when the common law was
supplanted by written constitutional and statutory law, the
question of incompatibility becomes less material, but the
reason behind the common law is not lost sight of in con-
struing the written law.

A holding that the public spirited, patriotic
conduct of a District Attorney in accepting the nonremunera-
tive chairmanship of a local chapter of The American National
Red Cross, whether it be in peace or war, deprives him of his
right to receive his salary as District Attorney is one which
should be reached, if at all, only with the greatest reluctance,
and solely because the wording of the Constitution permits of
no other determination. Such purpose, we think, was not even
remotely in the minds of the framers of our Constitution when
they wrote the provision here under consideration.

Moreover, what part of the sovereign power of
the United States, an indispensable prerequisite, under the
authorities we have cited, does the chairman of the local
chapter of The American National Red Cross have, either execu-
tive, legislative or judicial, that constitutes him the holder
of an office or position under the United States? To state the
question is to answer it — clearly none. The mere fact that
the charter of The American National Red Cross emanates from
the Congress of the United States is not, in our view, of great
importance upon the immediate question here involved. True,
under the charter powers granted to the incorporators and their

Honorable N. B. Bailey, page 12

successors, they engage in the highest type of patriotic
service; The American National Red Cross is nevertheless
an independent corporate body and functions as such and
not as an adjunct of the Government of the United States.

We say with equal emphasis, as was said in
the case of Patton v. Miller, supra, in speaking of the
Reconstruction Finance Corporation, that while it is incor-
porated by Congress, "it is not the government." Likewise,
while The American National Red Cross is incorporated by
Congress, it is not the government, and in nowise is owned,
controlled, operated or directed by the government.

From the foregoing we reach the conclusion that
the chairmanship of the local chapter of The American National
Red Cross is neither an office or position under the United
States, and hence there is no constitutional barrier preclud-
ing you, as District Attorney, from receiving your salary
while at the same time serving as chairman of the local chapter
of The American National Red Cross, and you are accordingly so
advised.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          J. F. Lollar
            Assistant

LPL:AEM



APPROVED JUL 19, 1943

ATTORNEY GENERAL OF TEXAS

APPROVED IN
LIMITED
CONFERENCE