

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

*Lee LA-13*

March 13, 1972

Honorable Grant Jones
Chairman, Urban Affairs Committee
Texas House of Representatives
P. O. Box 2777
Abilene, Texas

Dear Representative Jones:

Opinion No. M- 1096

Re: Whether a tenant of a
Housing Authority is
eligible to serve as a
Commissioner of that
Housing Authority.

Your recent letter requested the opinion of this department as to whether a tenant of a Housing Authority is eligible to serve as a Commissioner of that Housing Authority.

A Housing Authority for each city of the State is authorized by Article 1269k, Vernon's Civil Statutes, as amended. That statute was originally enacted as Chapter 462, Acts of the 45th Legislature, Regular Session, 1937.

Section 6, unchanged since the original act, is captioned "Interested commissioners or employees."

Section 6 reads as follows:

"Sec. 6. Interested commissioners or em-
ployees. No commissioner or employee of an au-
thority shall acquire <u>any interest direct or in-
direct in any housing project</u> or in any property
included or planned to be included in any project,
nor shall he have any interest direct or indirect
in any contract or <u>proposed contract for materials
or services to be furnished or used in connection
with any housing project</u>. If any commissioner or
employee of an authority owns or controls an in-
terest direct or indirect in any property included
or planned to be included in any housing project,
he immediately shall disclose the same in writing
to the authority and such disclosure shall be
entered upon the minutes of the authority. Fail-
ure to so disclose such interest shall constitute
misconduct in office." (Emphasis added.)

The housing authority is a public corporation created by the municipality to exercise certain expressly delegated sovereign powers pursuant to the general statutes.  Its commissioners must be regarded as public officers, with the power to exercise some portion of the sovereign functions of the government.  See Mechen on Public Officers, Sec. 1; Kimbrough v. Barrett, 93 Tex. 301, 55 S.W. 120 (1900); Attorney General Opinion No. C-527 (1965).

As such public officers, the commissioners are bound by the public policy of this state which forbids them from placing themselves in a position in which their private interest conflicts with their public duty.  The good faith of the official is of no legal significance, since the policy of the law is to insure the exercise of unselfish public interest by the official who is to be wholly removed from the temptation of serving his individual personal interest.  Meyers v. Walker, 276 S.W. 305 (Tex.Civ.App. 1925, no writ), and numerous cases cited; City of Edinburg v. Ellis, 59 S.W.2d 99 (Tex. Comm.App. 1933), and authorities also there cited; Attorney General Opinion No. O-2980 (1951).

It is within the context of the above common law standard of conduct for public officers that the Texas Legislature has provided by Article 1269k, Section 6, that no commissioner may have any interest, direct or indirect, in any housing project.  In State v. Murtes, 232 La. 486, 94 So.2d 446, 447 (1957) Webster's New International Dictionary, Second Edition, is cited for the following definition of "interested":  "Having a share or concern in some project or affair; involved; liable to be affected or prejudiced." Webster's Third New International Dictionary defines "interest" as "the state of being concerned or affected esp. with respect to advantage or well-being."

Certainly the Texas statute may not be construed as authorizing a tenant to serve as a Housing Authority Commissioner. This is consistent with the common law prohibiting conflicts of interest and should be interpreted in harmony therewith.  By Article 1, Vernon's Civil Statutes, Texas adopted the common law insofar as it was not inconsistent with the Constitution and laws of this State, and provided that it would be the rule of decision until altered or repealed by the Legislature.

The question you have asked has been answered in the negative by the Attorney General of Connecticut in an Opinion dated April 12, 1971, and by the Attorney General of Missouri in an Opinion No. 212 (Aug. 11, 1969).  In the only case of which we are aware, deciding

the question, that is Housing Authority of the City of New Haven, et al. v. Donald T. Dorsey, et al., No. 127,1354, the Court likewise concluded that under an almost identical statute of Connecticut tenants of a Housing Authority could not serve as Commissioners. This decision in effect upheld the Attorney General's position and analysis of the conflicting interest of the tenant. We quote from the Connecticut Attorney General's Opinion:

> "The interest of a tenant who is a housing authority commissioner obviously centers on the points at which the management functions and policies of the authority come into contact with individual tenants in both low and moderate income projects. This includes the selection and retention of tenants in the project; the determination of the rents to be charged for units in the project; the upkeep and maintenance of the project; the services and other benefits furnished by the authority to the tenants of the project; and the enforcement of project rules governing the conduct and rights of tenants within the project.
>
> "In fixing rents the commissioners must consider the amounts of payments on the principal and interest of the bonds of the authority as such payments become due; the cost of maintaining and operating the projects, including the cost of insurance and the administrative expenses of the authority; and the amounts to be set aside in reserves for repairs, maintenance and replacements, and for vacancy and collection losses. (Sec. 8-45 and 8-72, Gen. Stat.)
>
> "The ramifications of fixing rent charges are such that the tenant as housing authority commissioner must vote to increase his own rent to a level sufficient to amortize and service the authority's debt obligations. If the tenant commissioner lives in a moderate rental project, he is expected to decide whether or not to increase his rent to a level great enough to set up reserves for repairs and maintenance. If either determination depends on the vote of a tenant as housing authority commissioner who is

reluctant to pay a higher rent for his unit, the authority can fail to pay its bonded indebtedness and it can fail to set aside money for the upkeep of the project.  This can affect the authority through a possible bond default on the one hand and unchecked physical depreciation of the housing authority's properties on the other.

"Other examples of the authority's votes include setting and enforcing its policy in deciding whether or not to pursue delinquent rents and to evict tenants.  The housing authority commissioners must also decide whether or not to renovate the project unit or building occupied by the tenant commissioner, himself, as well as the replacement of wornout appliances in his unit.  Finally, each tenant as commissioner participates in voting on decisions that involve the hiring and firing of housing authority personnel who deal with him and his family from day to day.

"In view of this, it might be concluded that there is no area of the commissioner's management of the housing authority that does not bear directly on the amount of rent that the tenant housing authority commissioner will be expected to fix as an obligation for himself, or on the rules the tenant and his family will have to obey in their relations with the authority as landlord.

"Thus, whether the tenant as housing authority commissioner is, in fact, receiving the benefit of controlling the financial burden governed by his vote, his personal interests are always directly or indirectly involved in his vote in the commission. His personal interests are not inevitably and on all occasion antagonistic to the interests of the housing authority as such.  But the existence of a contract for the commissioner's tenancy in the housing authority project makes it possible for his personal interests to become antagonistic to his faithful discharge of his public duty as a housing authority commissioner.  (10 McQuillan, Municipal Corporations Sec. 29.197 pp. 469-470.)  It is the existence of such an interest that is decisive, not the actual effect or influence, if any, of the interest.  It

is the potential conflict that concerns the
courts, regardless of the good intentions of
the public officer. (Id., pp. 470-471.)"

In Housing Authority of the City of New Haven, the Court
said, in part:

"It appears in Connecticut that a tenant
cannot legally serve as a housing authority
commissioner. Whether or not the tenant acts
in total good faith is unimportant. Whether
he runs afoul of Section 8-42, Connecticut
General Statutes, or the well-imbedded common
law concepts of conflict of interest, or both,
is important. He simply cannot serve two
masters--himself as landlord and himself as
tenant. The relationship is such a close one
that disqualification is conclusively and ir-
rebuttably presumed where a juror stands to
either litigant in relation of landlord and
tenant."

In view of all of the foregoing considerations, we must
conclude that a tenant of a Housing Authority under Article 1269k
is prohibited from serving as a Commissioner thereof.

### S U M M A R Y

A tenant may not serve as a Commissioner
of a Housing Authority under Article 1269k,
Vernon's Civil Statutes.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James S. Swearingen
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
W. O. Shultz
Harold Kennedy
James Quick
Harriet Burke

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant