ACCEPTED
03-15-00313-CV
7085481
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/24/2015 2:50:18 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00313-CV

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/24/2015 2:50:18 PM
JEFFREY D. KYLE
Clerk

**IN THE
COURT OF APPEALS
FOR THE
THIRD SUPREME JUDICIAL DISTRICT OF TEXAS
AT AUSTIN, TEXAS**

**HERMENIA JENKINS,**

**Appellant,**

**v.**

**CROSBY INDEPENDENT SCHOOL DISTRICT AND MICHAEL L. WILLIAMS,
COMMISSIONER OF EDUCATION,**

**Appellees.**

On Appeal from the 200th Judicial District Court of Travis County, Texas
**Trial Court Cause No. D-1-GN-14-000619**

**BRIEF OF *AMICUS CURIAE*
TEXAS ASSOCIATION OF SCHOOL BOARDS' LEGAL ASSISTANCE FUND
IN SUPPORT OF APPELLEE, CROSBY INDEPENDENT SCHOOL DISTRICT**

UNDERWOOD LAW FIRM, P.C.

/s/ David P. Backus

**David P. Backus
State Bar No. 01493870
Ronn P. Garcia
State Bar No. 24065269
Underwood Law Firm, P.C.
1111 West Loop 289
Lubbock, Texas 79416
(806) 793-1711
(806) 793-1723 facsimile
ATTORNEYS FOR *AMICUS CURIAE*
THE TEXAS ASSOCIATION OF
SCHOOL BOARDS' LEGAL
ASSISTANCE FUND**

## IDENTITY OF THE PARTIES AND COUNSEL

*Amicus Curiae* Texas Association of School Board's ("TASB") Legal Assistance Fund ("TASB Legal Assistance Fund") hereby adopts the Parties' identity of parties and counsel to the order appealed from and, in accordance with Texas Rule of Appellate Procedure 38.2(a)(1)(A), provides the following supplemental information:

Attorneys for *Amicus Curiae* TASB Legal Assistance Fund:

David P. Backus
Ronn P. Garcia
Underwood Law Firm, P.C.
1111 West Loop 289
Lubbock, Texas 79416
(806) 793-1711

## IDENTITY OF BRIEFING PARTY

In accordance with Texas Rule of Appellate Procedure 11(b), this *Amicus Curiae* Brief is tendered on behalf of the TASB Legal Assistance Fund in Support of Appellee, Crosby Independent School District ("District," "Appellee," or "Crosby ISD").

Nearly 800 public school districts in Texas are members of the TASB Legal Assistance Fund, which advocates the interest of school districts in litigation with potential statewide impact. The TASB Legal Assistance Fund is governed by three

organizations: TASB, the Texas Association of School Administrators ("TASA"), and the Texas Council of School Attorneys ("CSA").

TASB is a non-profit corporation whose members are the approximately 1,030 public school boards in Texas. As locally elected boards of trustees, TASB's members are responsible for the governance of Texas public schools. *See* TEX. EDUC. CODE §11.151 (b) & (d). TASA represents the State's school superintendents and other administrators responsible for carrying out the education policies adopted by their local boards of trustees. CSA is comprised of attorneys who represent more than ninety percent of the public school districts in Texas.

## SOURCE OF FEE PAID

In accordance with Texas Rule of Appellate Procedure 11(c), this *Amicus Curiae* Brief is wholly funded by the TASB Legal Assistance Fund, by and through its members' contributions.

# TABLE OF CONTENTS

I.     IDENTITY OF THE PARTIES AND COUNSEL ...….…………..…. 2

II.     IDENTITY OF BRIEFING PARTY .....................……..…………... 2

III.     SOURCE OF FEE PAID ...…...……………………..….………..… 3

IV.     TABLE OF CONTENTS ..………......……………………..….…… 4

V.     INDEX OF AUTHORITIES ...…...…………………………… 7

VI.     STATEMENT OF CASE ……………………..…...……….…..... 12

VII.     ISSUED PRESENTED ……..…………….…..…...…………….. 12

VIII.     STATEMENT OF FACTS ……..…………..….…..…..………….. 12

IX.     SUMMARY OF THE ARGUMENT ………………….….….….... 12

X.     ARGUMENT …………………………...….………….….….... 14

    A. The Court Should Not Overturn Long-standing and
       Well-reasoned Precedent that Reassignments Between
       Administrative Positions in Texas Public Schools are
       Permissible as "Within the Same Professional Capacity" ………...…. 14

       1. The position of "administrator" is a professional
          capacity and one that must be broadly interpreted …………….… 14

       2. The Commissioner of Education has not
          arbitrarily interpreted "administrator" ……………………..… 17

       3. School districts must not be stripped of their
          flexibility to reassign administrators ………………………..…. 19

       4. The position of "principal" and "assistant principal"
          are within the "same professional capacity" …………...……….. 20

---

5. The superintendent has been given the authority to reassign all personnel in the best interest of the district ……………………………………………………………….. 27

B. A Principal is Not Fundamentally Different from an Assistant Principal …………………..………….................… 29

   1. State Board of Educator Certification requirements support the proposition that "principal" and "assistant principal" are within the same professional capacity …………………………………….....… 29

   2. A "principal" does not lose due process rights by being reassigned to another administrative position ……..……….. 34

   3. The position of principal is not "unique" whereby reassignment would be prohibited………………………..….…… 35

   4. Due Process protects no more than the status of being a governmental employee together with the "economic fruits" accompanying that position ………….…… 38

C. "Professional Capacities" Have *Never* Been Limited by Section 21.201(1) of the Texas Education Code ………………..……… 39

   1. The Commissioner of Education has not conceded that "professional capacity" is exclusively defined by section 21.201 of the Texas Education Code ……..………… 40

   2. The Legislative Intent is not that "Professional capacities" be limited to Section 21.201 of the Education Code …………………………………….……... 41

D. A Favorable Ruling for Appellant Would Result in an Unfavorable Result for Every Public School District in Texas ……………………………..…………………......... 42

XI.    PRAYER ……..…………...……...…………………………..…....….……. 43

XII.   CERTIFICATE OF COMPLIANCE …….…………….....…..............…. 45

XIII.  CERTIFICATE OF SERVICE …….…………..…….….…..….……...…. 46

XIV.  APPENDIX INDEX …….………………………......…..…….….……. 47

# INDEX OF AUTHORITIES

### *Case Law*

*Abbott et al. v. Ector County Indep. Sch. Dist.*,
Docket No. 081-R3-1287, 105-R3-288 (Comm'r Educ. 1991)……..... 26, 27

*Andrews v. Houston Indep. Sch. Dist.*,
Docket No. 236-R1-897 (Comm'r Educ. 1997)…………………….…….. 26

*Barich v. San Felipe-Del Rio Consolidated Ind. Sch. Dist.*,
Docket No. 117-R1a-484 (Comm'r Educ. 1985)………………...... 14, 41

*Carpenter v. Wichita Falls Ind. Sch. Dist.*,
Docket No. 247-R3-491 (Comm'r Educ. 1993)………...… 15, 19, 20, 22, 42

*Findeisen v. North East Indep. Sch. Dist.*,
749 F.2d 234, 240-41 & n. 3 (5th Cir. 1984)…………………………….. 39

*Gonzalez v. Donna Indep. Sch. Dist.*,
Docket No. 074-R10-605 (Comm'r Educ. 2007)………………...… 22, 31

*Grounds v. Tolar Indep. Sch. Dist.*,
Docket No, 340-R3-786 (Comm'r Educ. 1986)………………………. 26, 27

*Hester v. Canadian Indep. Sch. Dist.*,
Docket No. 106-Rl-585 (Comm'r Educ. 1985)………………….…… 26, 27

*Jenkins v. Crosby Indep. Sch. Dist.*,
Docket No. 043-R10-1211 (Comm'r Educ. 2013)………………………... 12

*Jenkins v. Crosby Indep. Sch. Dist.*,
No. D-1-GN-14-000619 (200th Dist. Ct., Travis County,
Tex. Feb. 26, 2015)……………………………………………………….. 12

*Jett v. Dallas Indep. Sch. Dist.*,
798 F.2d 748, 754 (5th Cir. 1986); 491 U.S. 701, 708 (U.S.
1989)………...……………………………………………...… 19, 38, 39

---

*Keith v. Tarkington Indep. Sch. Dist.*,
    Docket No. 459-R3-89l (Comm'r Educ. 1992)……………………..…… 23

*Kimbrough v. Barnett*,
    93 Tex. 301, 55 S.W. 120, 121-122 (1900)………………………….. 35

*Lieberman v. Eagle Mountain-Saginaw Indep. Sch. Dist.*,
    Docket No. 192-R3-785 (Comm'r Educ. 1985)………………..……... 26

*Marshall v. Seguin Indep. Sch. Dist.*,
    Docket No. l77-R1-690 (Comm'r Educ. 1991)……..…………..……26

*McCoy v. Kermit Indep. Sch. Dist.*,
    Docket No. 004-R3-0908 (Comm'r Educ. 2012)…………….......…14, 15, 26

*Montgomery v. Richardson Indep. Sch. Dist.*,
    Docket No. 007-RlO-1008 (Comm'r Educ. 2012)………….……..…….. 26

*Murillo v. Laredo Indep. Sch. Dist.*,
    Docket No. 027-R3-0108 (Comm'r Educ, 2012)……….…...………… 26

*Pasqua v. Fort Stockton Indep. Sch. Dist.*,
    Docket No. 011-R3-1102 (Comm'r Educ. 2004)……..…..…… 21, 22, 26

*Perales v. Robstown Indep. Sch. Dist.*,
    Docket Nos. 052-R10-104 & 084-R3-604, (Comm'r Educ. 2006)...…… 23, 26

*Perez v. Donna Indep. Sch. Dist.*,
    Docket No. 086-R1-705 (Comm'r Educ. 2007)……………….....…… 26

*Ramos v. El Paso Indep. Sch. Dist.*,
    Docket No. 002-R10-900 (Comm'r Educ. 2002)…………….....…… 26

*Reyes v. Culberson County Indep. Sch. Dist.*,
    Docket No. 229-R3-787 (Comm'r Educ. 1987)………………….. 26

*Salinas v. Roma Indep. Sch. Dist.*,
    Docket No. 058-R3-1 196 (Comm'r Educ. 1997)……..…..………..… 26

*Sanchez v. Donna Indep. Sch. Dist.*,
Docket No. 075-R10-605 (Comm'r Educ. 2007)…………………...… 22, 31

*Satcher v. Florence Indep. Sch. Dist.*,
Docket No. 363-R3-786 (Comm'r Educ. 1987)…………………………….. 26

*Temple Indep. Sch. Dist. v. Proctor*,
97 S.W.2d 1047, 1052 (Tex. Civ. App. 1936)………………………….... 35

*Thomas v. Bd. of Trustees of Galveston ISD*,
515 F.Supp. 280, 287 (S.D. Tex. 1981)…………………….…………… 16

*Tuck v. Alief Indep. Sch. Dist.*,
Docket No. 008-Rl0-l 007 (Comm'r Educ. 2012)…...…………………… 26

*Underwood v. West Rusk Indep. Sch. Dist.*,
Docket No. 062-R3-198 (Comm'r Educ. 1998)………………….....  21, 26

*Vasquez v. Dallas Indep. Sch. Dist.*,
Docket No. 095-R3-188, (Comm'r Educ. 1991)………………………... 19, 27

*Veliz v. Donna Indep. Sch. Dist.*,
Docket No. 01 1-R3-999 (Comm'r Educ. 2000)………..……….....… 20, 21

*Wheeler v. Austin Indep. Sch. Dist.*,
Docket No. 008-R3-1108 (Comm'r Educ. 2011)……………….…… 17, 26, 32

*Young v. Leggett Indep. Sch. Dist.*,
Docket No. 175-R3-898 (Comm'r Educ. 1999)……………….……... 26

*Yturralde v. El Paso Indep. Sch. Dist.*,
Docket No. 001-R10-900 (Comm'r Educ. 2002)....................................... 26

## *Statutes*

TEX. EDUC. CODE §11.151 (b) & (d)……………………………………….....  3

TEX. EDUC. CODE §11.163(a)(1)………………………………………….....  36

TEX. EDUC. CODE §11.201(a)…………………………………………..… 37

TEX. EDUC. CODE §11.201(d)…………………………………..…..…. 28

TEX. EDUC. CODE §11.201(d)(2)-(4)…………………………………… 36

TEX. EDUC. CODE §21.031 …….…………………..…………….…... 29

TEX. EDUC. CODE §21.042……………………………………….…... 30

TEX. EDUC. CODE §21.201……………………………… 39, 40, 41, 42

TEX. EDUC. CODE §21.204 (b)………………………………………… 15

TEX. EDUC. CODE §21.206……………………….…… 21, 23, 27, 40, 42

TEX. EDUC. CODE §21.210(d)………………………………..……... 35

## Administrative

19 TEX. ADMIN CODE §229.2(3)……………………………………… 17

19 TEX. ADMIN. CODE §241.1(c)…………………………..……... 31

19 TEX. ADMIN. CODE §241.1(d)…………………………….…….. 29

19 TEX. ADMIN. CODE §241.15…………………………….…….. 31

19 TEX. ADMIN. CODE §241.20…………………………..….… 30

TEX. ATT'Y GEN. OP. NO. GA-0123 (November 2003)……………………… 35, 36

DISTRICT BOARD POLICY BJA (LEGAL)…………………………….... 27

DISTRICT BOARD POLICY DK (LOCAL) ……………………….......… 27, 28

### *Rules*

TEX. R. APP. P. 11(b) …………………………………………..…………………… 2

TEX. R. APP. P. 11(c) …………………………………………..…………………… 3

TEX. R. APP. P. 38.2(a)(1)(A) ……………………….…………..…………….. 2

## STATEMENT OF THE CASE

This is a case on appeal from a decision of the Texas Commissioner of Education (the "Commissioner"), *see Jenkins v. Crosby Independent School District*, Docket No. 043-R10-1211 (Tex. Comm'r Educ. 2013), and the 200th Judicial District Court of Travis County Texas (the "district court") *Jenkins v. Crosby Independent School District and Texas Commissioner of Education, Michael Williams*, No. D-1-GN-14-000619 (200th Dist. Ct., Travis County, Tex. Feb. 26, 2015). This *Amicus Curiae* Brief is presented to the Court, on behalf of Appellee, advocating for an affirmation of the decisions of the Commissioner and the district court.

## ISSUES PRESENTED

TASB Legal Assistance Fund presents this Brief to advocate for Appellee on issues that have been raised by the parties.

## STATEMENT OF FACTS

To the extent necessary, TASB Legal Assistance Fund adopts the facts as set forth in the Appellee's Response and Brief.

## SUMMARY OF THE ARGUMENT

Precedent should not be lightly overturned. It has long been established that public school districts have the authority and flexibility to reassign school employees, including administrators, to other positions that are within such

employees' same professional capacity. An "administrator" is broadly and reasonably interpreted to include a variety of school district positions, including a **principal** and an **assistant principal**. These two positions are historically treated as being in the same professional capacity because both require a professional employee to function as an administrator and require comparable professional skills and responsibilities. School districts must be able to continue to reassign administrators – including principals – appropriately to other positions within the same professional capacity in order to meet the needs of the school.

Moreover, a principal is not "unique" or fundamentally different than an assistant principal. Consequently, a principal does not lose any property or due process rights solely as a result of being reassigned to the position of assistant principal. A reassignment of a principal does not constitute a demotion, nonrenewal, or termination. Because principals and assistant principals have the same certification standard requirements, professional development expectations, and many of the same job responsibilities, they have historically not been treated as fundamentally different by the Commissioner or the courts.

Alternatively, the categories of *professional capacities have* never been fully established or limited by the Texas Legislature or the Commissioner. A "principal" is not a protected professional capacity simply because it is found in the category of employees listed in section 21.201 of the Texas Education Code.

Moreover, the Legislature has acquiesced to the Commissioner's longstanding interpretation that "same professional capacity" in the administrative context includes a broader range of school district positions than simply campus principal.

Finally, long-standing public policy in Texas dictates that school districts should have flexibility regarding personnel assignments in order to efficiently and effectively carryout the operations of school campuses in the best interest of the district and, more importantly, of its students. Granting the Appellant's requested relief would upend this long-standing policy and result in a dramatic state-wide change affecting every public school district and every public school student in Texas.

## ARGUMENTS

A.  **The Court Should Not Overturn Long-standing and Well-reasoned Precedent that Reassignments Between Administrative Positions in Texas Public Schools, including the Positions of "Principal" and "Assistant Principal," are Permissible as "Within the Same Professional Capacity."**

> 1.  *The position of "administrator" is a professional capacity and one that must be broadly interpreted.*

The Commissioner, from the earliest substantive decisions concerning this issue, has held that the term "administrator" is in fact a professional capacity. *See, e.g.*, *Barich v. San Felipe-Del Rio Consolidated Indep. Sch. Dist.*, Docket No. 117-R1a-484 (Comm'r Educ. 1985); and (most recently) *McCoy v. Kermit Indep. Sch.*

*Dist.*, Docket No. 004-R3-0908 (Comm'r Educ. 2012). Contrary to Appellant's arguments, the term is not defined in the Texas Education Code. However, the Commissioner's definition has been widely – if not universally – accepted for decades. Without "administrators" broadly-defined, schools are hampered in their abilities to effectively and efficiently run schools.

In finding that the professional capacity of "administrator" is to be broadly interpreted, the Commissioner has stated the following:

> "It is possible to imagine situations where the transfer clause of an employment contract would be held to be unenforceable under §21.204(b)[1] However, this is not such a case. It has been the consistent view of the Commissioner that the [Term Contract Nonrenewal Act, "TCNA"] balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to this law by creating broad classes within which transfers do not implicate TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. **The need for flexibility in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic 'administrator' position before me consistent with the policies of the TCNA**."

*See McCoy*, Docket No. 004-R3-0908, *4 (Comm'r Educ. 2012) and *Carpenter v. Wichita Falls Indep. Sch. Dist.*, Docket No. 247-R3-491 (Comm'r Educ. 1993) (emphasis added).

---

[1] The old version of section 21.204 of the Texas Education Code is the predecessor of the current section 21.206 of the Texas Education Code.

Conversely, a narrower definition for the term "administrator" would lead to needlessly complex procedures when a reassignment is necessary. The practical difficulties of operating public schools with narrowly-stated professional capacities in employment contracts are illustrated in the case of *Thomas v. Board. of Trustees of Galveston ISD*, 515 F.Supp. 280, 287 (S.D. Tex. 1981). In *Thomas*, the professional employee's contract stated that he was employed in the position of "assistant principal," and it did not provide the school district with the right to reassign the employee. Under those circumstances, the court found that the contract language conferred a property right in the position of "assistant principal." Since *Thomas*, all public school districts have strayed from such specificity when referencing employment positions in contracts, and properly so. Instead, school districts have trended toward employing their certified employees on contracts that reference, generally, one of three main categories: classroom teaching, administrative, or superintendent positions. When school districts have referenced too broad a category in their employment contracts, the Commissioner has restricted them from exercising their contractual and statutory reassignment rights between the generally recognized categories of employment positions, such as from the position of assistant principal to that of a classroom teacher. Thus, contrary to Appellant's assertions, the current state of Commissioner jurisprudence holds that, when an employment contract recites an employment position that is

overly broad to define the professional capacity, such as "employee," the employment *category* within which the employee is assigned – as opposed to the employee's title or position – defines the scope of a lawful reassignment. For example, If a person with principal certification executes an employment agreement as an "employee" and is assigned to the position of principal, the commissioner will consider that person as falling within the employment category of an "administrator", and that person may be reassigned to any other administrator position for which the employee is certified and that is in a district's and/or students' best interest. This circumstance is best illustrated by the Commissioner's Decision in *Wheeler v. Austin Independent School District*, Docket No. 008-R3-1108 (Comm'r Educ. 2011). In *Wheeler*, the Commissioner found the professional capacity stated in the contract to be too broad, and he, consequently, restricted the school district from exercising its contractual and statutory reassignment rights between categories of employment positions, such as from the position of assistant principal to that of a classroom teacher. *See id.*

### 2. The Commissioner of Education has not arbitrarily interpreted "administrator."

Appellant argues that the term "administrator" does not have a definition and is therefore a "contractual black hole." *See* Appellant Brief, at pgs. 26. However,

Appellant fails to acknowledge that the term "administrator" is in fact defined by state law.

In Chapter 229 (Accountability System for Educators Preparation Programs) of Title 19 of the Texas Administrative Code, an "administrator" is defined as "an educator whose certification would entitle him or her to be assigned as a principal or assistant principal in Texas, whether or not he or she is currently working in such an assignment." *See* 19 TEX. ADMIN. CODE §229.2(3). An "administrator" position is clearly addressed by state law and expressly includes the principal and assistant principal positions.

Consequently, it is incorrect to assert that the Commissioner has "arbitrarily interpreted 'administrator' broadly to include assistant elementary school principal, high school principal, middle school assistant principal, attendance coordinators, and others." *See Amicus*, Texas Elementary Principals and Supervisors Association's ("*Amicus* TEPSA") Brief at p.12. The professional capacity of "administrator" was not arbitrarily interpreted by the Commissioner in this case but, rather, it was interpreted and applied as it has been for years to include the positions of principal and assistant principal.

### 3. School districts must not be stripped of their flexibility to reassign administrators.

Appellant's attempt to tie the hands of school districts in the area of administrative reassignments is not a novel one. In *Vasquez v. Dallas Independent School District*, Docket No. 095-R3-188, (Comm'r Educ. 1991), the employee sought to have the Commissioner review her reassignment from principal to vice principal based on a due process violation claim. The employee's contract did not specify a particular job assignment. The Commissioner upheld the reassignment, noting that "a prerequisite to any due process challenge to a reassignment decision is that the Plaintiffs have had some property or liberty interest in her position." *See Vasquez*, Docket No. 095-R3-188 (*citing Board of Regents v. Roth*, 408 U.S. 564 (1972)). The Commissioner reasoned that when an employee signs a contract with the district containing no reference to a specific job assignment, due process protects no more than the status of being a governmental employee together with the "economic fruits" accompanying the position. *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 754 (5th Cir. 1986)). Because the employee lacked a property interest in her position, her claims for violations of due process failed.

Since *Jett* and *Vasquez*, the Commissioner has repeatedly considered issues of reassignment, professional capacity, and the need for district flexibility; he has consistently arrived at the same conclusion. For example, in *Carpenter v. Wichita*

*Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1993), the Commissioner held that the professional capacity of an administrator is to be broadly interpreted for reassignment purposes. There the Commissioner stated, "the [Term Contract Nonrenewal Act "TCNA"] balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly." *Id.* at *3. This policy balance is prudent and must be allowed to continue.

### 4. The position of "principal" and "assistant principal" are within the "same professional capacity."

Appellant's argument of hypothetical variances in the titles and duties of the positions of principal and assistant principal fails. *See* Appellant Brief at pgs. 23-24. The differentiation of duties between administrative positions has been previously presented to and rejected by the Commissioner. For example, in *Veliz v. Donna Independent School District*, Docket No. 011-R3-999 (Comm'r Educ. 2000), the school district reassigned the employee from attendance coordinator to middle school assistant principal. The employee claimed that his reassignment constituted an unauthorized change in professional capacity and that the employing school district failed to follow the nonrenewal procedures set out in Chapter 21 of the Texas Education Code. *See id.* at *2. The Commissioner concluded that because "both positions require Appellant to function as an administrator and

require comparable professional skills and responsibilities," the district had not changed the employee's professional capacity. *See id.* at *2-3. The Commissioner reasoned as follows:

> Although the positions of attendance coordinator and middle school assistant principal are not identical, they are in the ***same professional capacity as a certified administrator***. Both positions require Petitioner to function as an administrator and require comparable professional skills and responsibilities. Petitioner's reassignment comports with his contract. **A reassignment from attendance coordinator to assistant principal comports with the 'same professional capacity' standard set forth in section 21.206**.

*See Veliz*, Docket No. 011-R3-999, *3 (emphasis added).

Similarly, in *Underwood v. West Rusk Independent School District*, Docket No. 062-R3-198 (Comm'r Educ. 1998), the Commissioner concluded that a "junior high school principal" reassigned to a "high school assistant principal" position remained an administrator and continued to function in the same professional capacity where: (1) the employment contract provided for reassignment of positions; (2) the reassigned position had similar duties to the previous position; (3) the salary with the assigned position remained the same; (4) professional responsibilities did not lessen; and (5) the degree of skill required did not lessen. *See id.* at *2-3.

In a more recent example of the Commissioner's consistent position, *Pasqua v. Fort Stockton Independent School District*, Docket No. 011-R3-1102 (Comm'r

Educ. 2004), the Commissioner held that the position of principal and assistant principal are the "same professional capacity." In *Pasqua*, the employee, after serving as high school principal for eleven years, received a two-year contract from the district as a "Certified Administrator Position as Assigned" for the 2002-2003 school year. *See id.* at *1. The contract also provided for the "reassignment of positions or duties . . . at any time during the contract." *See id.* at *1. After one day on the job, the superintendent assigned the employee to the position of assistant middle school principal. After resigning, the employee brought a claim before the Commissioner contending that his property rights in his contract had been violated by the district. The Commissioner looked to the wording of the contract and held, "Petitioner's contract [was] not a contract for the position of high school principal," but rather "a contract for a certified administrator position as assigned." *See id.* at *4. The Commissioner emphasized that "the professional capacity of administrator is to be broadly interpreted for reassignment purposes." *See id.* (*citing Carpenter v. Wichita Falls Indep. Sch. Dist.*, Docket No. 247-R3-491 (Comm'r Educ. 1993); *see also Sanchez v. Donna Indep. Sch. Dist.*, Docket No. 075-R10-605 (Comm'r Educ. 2007) *and Gonzalez v. Donna Indep. Sch. Dist.*, Docket No. 074-R10-605 (Comm'r Educ. 2007)). The Commissioner was careful to point out that "the contract itself allow[ed] [the employee] to be reassigned as long as compensation [was] not reduced from that in the 2001-2002 school year."

*See Pasqua*, Docket No. 011-R3-1102, at \*4. Because the employee did not lose any compensation, his reassignment did not violate his contract.

The crux of Appellant's argument is that the language contained in the definition of "teacher" found in TEX. EDUC. CODE § 21.201(1) should be the only standard of whether two administrative positions are within the same professional capacity. But, the Commissioner has consistently rejected this argument. For example, in *Perales v. Robstown Independent School District*, Docket Nos. 052-R10-104 & 084-R3-604, (Comm'r Educ. 2006), the school district reassigned an employee from Even Start Director (a small district-wide program) to campus assistant principal. In analyzing whether the two positions were in the same professional capacity, the Commissioner reasoned that, "while the duties and responsibilities are not identical, they are ***sufficiently similar***." *See id.* at 6. (emphasis added). He said, "[W]hile there was movement on the organizational chart, **the movement was only one level**." *See id.* (emphasis added). The Commissioner concluded that "'same professional capacity,' as used in the TEX. EDUC. CODE § 21.206, **is not limited to the individual classifications used in the TEX. EDUC. CODE § 21.201(1)**." *See id.* at 8 (emphasis added). The Commissioner compared the *Perales* case to *Keith v. Tarkington Independent School District*, Docket No. 459-R3-89l (Comm'r Educ. 1992), wherein the

Commissioner held that a reassignment from a central office position to the position of assistant principal was in the same professional capacity.

Appellant states that "Principal is one of several 'professional capacities' specifically identified in §21.201(1)," and she implies that the positions listed in §21.201(1) are an exhaustive list of professional capacities. *See* Appellant's Brief, at pg. 15. This argument is incorrect and misleading. As discussed in more detail *infra*, an individual holding the position of principal, and one holding the position of assistant principal, must each hold the exact same certificate issued to them "under Subchapter B," i.e., from the State Board for Educator Certification, for their respective assignments. Thus, the two positions in question in this case fall under the same statutory category of "principal." As such, Appellant's reassignment from principal to assistant principal was lawfully, and contractually, permitted.

Moreover, Appellant's suggestion that prohibiting involuntary reassignments outside of the categories stated in section 21.201(1) would provide for more simplicity than currently exists also fails. Due to long-standing Commissioner precedent, each classroom teacher should know that he or she is subject to the reassignment clause in the teacher's contract to the extent that he or she has appropriate certification for the classroom teaching assignment. Similarly, each

certified administrator should understand that he or she is subject to reassignment to any administrative position for which the administrator is appropriately certified, unless the contract specifically states otherwise. This professional understanding on the part of classroom teachers and administrators is a result of the Commissioner's clear, consistent, and long-standing holdings relating to what constitutes "same professional capacity." If this Court strays from the precedent, uncertainty and organizational paralysis, rather than certainty and consistency, would result.

For example, if the Court were to grant Appellant the relief she seeks, overturning the trial court and the decision of the Commissioner, school districts would be required to nonrenew a campus principal if he or she refused to be reassigned to the central office where the superintendent needed the campus administrator's particular skill set. Under Appellant's rationale, the principal could simply state that the administrative position the superintendent needed the administrator to assume required too much responsibility, and that he or she was happier as campus principal. Such a result would make a mockery of the superintendent's statutory reassignment authority as well as his or her responsibility to utilize personnel assets in the district to their maximum effect on student performance and in the best interests of the school district.

For nearly 30 years, school districts, administrators, teachers, and all other certified professional employees, have operated under the consistent analysis and finding of the Commissioner that "same professional capacities" are not limited to those positions listed under the definition of a "teacher" in section 21.201 of the Texas Education Code. There are a multitude of consistent Commissioner's decisions, following *Barich*, that hold that a "professional capacity" may be defined by contractual agreement.[2] In many of the cases, school districts hired professional employees under Chapter 21 term contracts for particular capacities

[2] *See e.g.*, *McCoy v. Kermit Indep. Sch. Dist.*, Docket No. 004-R3-0908 (Comm'r Educ. 2012); *Tuck v. Alief Indep. Sch. Dist.*, Docket No. 008-Rl0-l 007 (Comm'r Educ. 2012); *Montgomery v. Richardson Indep. Sch. Dist.*, Docket No. 007-RlO-1008 (Comm'r Educ. 2012); *Murillo v. Laredo Indep. Sch. Dist.*, Docket No. 027-R3-0108 (Comm'r Educ. 2012); *Wheeler v. Austin Indep. Sch. Dist.*, Docket No. 008-R3-l 108 (Comm'r Educ. 2011); *Lehr v. Ector County Indep. Sch. Dist.*, Docket No. 003-R3-0908 (Comm'r Educ. 2011); *Perez v. Donna Indep. Sch. Dist.*, Docket No. 086-R1-705 (Comm'r Educ. 2007); *Gonzalez v. Donna Indep. Sch. Dist.*, Docket No. 074-Rl0-605 (Comm'r Educ. 2007); *Sanchez v. Donna Indep. Sch. Dist.*, Docket No. 075-R10-605 (Comm'r Educ. 2007); *Perales v. Robstown Indep. Sch. Dist.*, Docket Nos. 052-R10-104, 084-R3-604 (Comm'r Educ. 2006); *Pasqua v. Fort Stockton Indep. Sch. Dist.*, Docket No. 011 -R3- 1102 (Comm'r Educ. 2004); *Ramos v. El Paso Indep. Sch. Dist.*, Docket No. 002-R10-900 (Comm'r Educ. 2002); *Yturralde v. El Paso Indep. Sch. Dist.*, Docket No. 001-R10-900 (Comm'r Educ. 2002); *Veliz v. Donna Indep. Sch. Dist.*, Docket No. 011-R3-999 (Comm'r Educ. 2000); *Young v. Leggett Indep. Sch. Dist.*, Docket No. 175-R3-898 (Comm'r Educ. 1999); *Underwood v. Rusk Indep. Sch. Dist.*, Docket No. 062-R3-198 (Comm'r Educ. 1998); *Salinas v. Roma Indep. Sch. Dist.*, Docket No. 058-R3-1 196 (Comm'r Educ. 1997); *Keith v. Tarkington Indep. Sch. Dist.*, Docket No. 459-R3-891(Comm'r Educ. 1992); *Andrews v. Houston Indep. Sch. Dist.*, Docket No. 236-R1-897 (Comm'r Educ. 1997); *Carpenter v. Wichita Falls Indep. Sch. Dist.*, Docket No. 247-R3-491 (Comm'r Educ. 1991); *Marshall v. Seguin Indep. Sch. Dist.*, Docket No. l77-R1-690 (Comm'r Educ. 1991); *Abbott et al. v. Ector County Indep. Sch. Dist.*, Docket No. 081-R3-1287, 105-R3-288 (Comm'r Educ. 1991); *Satcher v. Florence Indep. Sch. Dist.*, Docket No. 363-R3-786 (Comm'r Educ. 1987); *Reyes v. Culberson County Indep. Sch. Dist.*, Docket No. 229-R3-787 (Comm'r Educ. 1987); *Grounds v. Tolar Indep. Sch. Dist.*, Docket No, 340-R3-786 (Comm'r Educ. 1986); *Lieberman v. Eagle Mountain-Saginaw Indep. Sch. Dist.*, Docket No. 192-R3-785 (Comm'r Educ. 1985); and *Hester v. Canadian Indep. Sch. Dist.*, Docket No. 106-Rl-585 (Comm'r Educ. 1985).

that were not specifically listed in the definition of "teacher" in the section §21.201(1). Yet the Commissioner held in each case that the position set forth in the contract was the employee's "professional capacity." *See, e.g. Hester*, 106-Rl-585 ("teacher/coach"); *Grounds*, 340-R3-786 ("Head football coach"); *Abbott et al.*, 081-R3-1287, 105-R3-288 ("teacher/deans"); *Salinas*, 058-R3-1 196 ("teacher/assistant band director"). Like the position of "administrator," the positions of "teacher/coach," "Head football coach," "dean," and "assistant band director" are also ***not listed*** under the definition of a "teacher" in section 21.201(1) of the Texas Education Code. Nevertheless the Commissioner has appropriately found each of those positions, as set forth the employees' contracts, to be "professional capacities" for purposes of application of Texas Education Code 21.206.

5. ***The superintendent has been given the authority to reassign all personnel in the best interest of the district.***

Although Appellant suggests that Appellant's contract does not support the reassignment to assistant principal, the Appellant's actual contractual language, and years of guidance from the Commissioner of Education, indicate otherwise. *See, e.g.*, *Vasquez v. Dallas Indep. Sch. Dist.*, Docket No. 095-R3-188, (Comm'r Educ. 1991) (considering that "under the terms of the contract, the district was expressly given 'the right to assign the employee as [it] may determine, and may

from time to time assign or reassign the employee,'" and "no specific job title was provided for the contract.").

The Superintendent's authority and duties regarding personnel reassignments are found in the Texas Education Code and district board policies BJA and DK. The duties of the superintendent specifically include the administrative authority and responsibility for the assignment of all personnel of the District. *See* TEX. EDUC. CODE § 11.201(d) & BOARD POLICY BJA (LEGAL). Moreover, most school districts have adopted a local policy like this one:

> ***All personnel*** are employed ***subject to assignment and reassignment by the Superintendent*** or designee when the Superintendent determines that the assignment or ***reassignment is in the best interest of the District***. Reassignment shall be defined as a transfer to another position, department, or facility that does not necessitate a change in the employment contract of a contract employee.

*See* BOARD POLICY DK (LOCAL).

In addition to statutory and local policy authority, the superintendent may be given contractual authority to reassign employees. As previously noted, many school districts have incorporated language into their employment contracts regarding reassignment similar to the following:

> The Superintendent shall have the right to assign or reassign the Employee to positions, duties, or additional duties and to make changes in responsibilities, work, transfers, or classification at any time during the term of employment with the District.

Most, if not all, public school employees are working with the statutory, local policy, and contractual awareness and acknowledgement that the superintendent has the authority and responsibility to reassign them in the best interest of the district. No district administrator or employee, other than the superintendent, is "unwarned" that he or she may be reassigned to another position of the same professional capacity for which he or she is certified.

This Court should not overturn the trial court, the decision of the Commissioner, nor the long-standing and well-reasoned precedent that reassignments between administrative positions in Texas public schools are permissible as "within the same professional capacity."

**B.    A Principal is Not Fundamentally Different from an Assistant Principal.**

*1. State Board of Educator Certification requirements support the proposition that "principal" and "assistant principal" are within the same professional capacity.*

The state-mandated certification requirements of Texas further support the proposition that a reassignment from "principal" to "assistant principal" is within the same professional capacity.   The State Board of Educator Certification ("SBEC") regulates and oversees all aspects of educator certification.  *See* TEX. EDUC. CODE §21.031.   The SBEC has adopted rules defining the training requirements, minimum academic qualifications, and prior experience necessary

for each class of certificate, in accordance with section 21.042 of the Texas Education Code. *See id.* at § 21.042.

The holder of the principal certificate issued by SBEC "may serve as a ***principal or assistant principal*** in a Texas public school." *See* 19 TEX. ADMIN. CODE § 241.1(d)(emphasis added). In other words, to be assigned to the position of "assistant principal" or to "principal," an individual must hold a valid "Standard Principal Certificate." To be eligible to receive the Standard Principal Certificate, a candidate must:

(1) Successfully complete the appropriate examinations required (relating to Assessment of Educators);

(2) Hold, at a minimum, a master's degree from an accredited institution of higher education that at the time was accredited or otherwise approved by an accrediting organization recognized by the Texas Higher Education Coordinating Board;

(3) Hold a valid classroom teaching certificate;

(4) Have two creditable years of teaching experience as a classroom teacher; and

(5) Successfully complete a principal preparation program that meets the requirements of the Preparation Program Requirements; the Standards Required for the Principal Certificate; the Provisions for Educator Preparation Candidates; and Educator Preparation Programs.

*See* 19 TEX. ADMIN. CODE § 241.20.

The standards for the principal certificate are the knowledge and skills that must be used by educator preparation programs in the development of curricula

---

and coursework and are used by the SBEC to serve as the basis for developing the assessments that are a vital part of the certification process. The standards for principals as required by section 21.046 of the Texas Education Code, emphasize:

(1) instructional leadership;

(2) administration, supervision, and communication skills;

(3) curriculum and instruction management;

(4) performance evaluation;

(5) organization; and

(6) fiscal management.

*See* 19 TEX. ADMIN. CODE § 241.15. Whether an individual is serving as a principal or assistant principal, he or she is expected to actively participate in professional development activities to continually update his or her knowledge and skills. *See* 19 TEX. ADMIN. CODE § 241.1(c). The Commissioner has also acknowledged the identical certification standard requirements and professional development expectations for the two positions. *See, e.g.*, *Sanchez v. Donna Indep. Sch. Dist.*, Docket No. 075-R10-605 (Comm'r Educ. 2007) *and Gonzalez v. Donna Indep. Sch. Dist.*, Docket No. 074-R10-605 (Comm'r Educ. 2007). The SBEC Rules provide an indication that these positions entail significantly similar duties and require significantly similar skills. Consequently, these two administrative positions fall within the same professional capacity.

Moreover, the Commissioner has recognized the importance of SBEC certification when analyzing whether two positions were the same professional capacity. In *Wheeler v. Austin Independent School District,* Docket No. 008-R3-1108 (Comm'r Educ. 2011), the Commissioner examined whether a reassignment from assistant principal to classroom teacher was in the same professional capacity. The reassignment had been accomplished under a Chapter 21 contract that listed the employment position of "professional employee." After determining that the employment position listed in the contract was too broad, the Commissioner examined the duties of the two positions to determine whether they were the same professional capacity. In that analysis, the Commissioner looked to the certification requirements of the former position (assistant principal) and the position to which the employee was reassigned (classroom teacher). *See id.* at *7. In doing so, the Commissioner, not surprisingly, determined that assistant principal and classroom teacher were not the same professional capacity. *See id.* at *8. Applying the *Wheeler* rationale to the present case, the Court must affirm, as the Commissioner and the District Court concluded, that the SBEC certification for both Appellant's former position (principal) and her subsequent position (assistant principal) require the identical certification and accompanying professional qualifications and that Appellant's reassignment was permissible as within the same professional capacity.

In her Brief, Appellant states that she was "effectively demoted from the unique position of campus principle to one of several assistant principals at a different campus, fundamentally altering her contractual relationship with the district . . ." *See* Appellant's Brief at pg. 18. This assertion is untrue. Such a change in position is not generally considered a "demotion." Appellant was reassigned from an Intermediate Principal to a High School Assistant principal position. Some Elementary or Intermediate school campus principals aspire to be the High School principal. Consequently, many principals consider an assistant principal position at the high school to be a professionally advantageous move from their current elementary or intermediate/middle school campus administrator duties. Additionally, such principals view this move as a logical professional "stepping stone," since the administrator in this situation would have the best opportunity to learn the varying vocational differences and challenges between being an administrative leader at an elementary school to being one at a high school, both experiences being valuable in ultimate preparation for broader district central office responsibilities as an assistant superintendent or even superintendent of schools.

## 2. A "principal" does not lose due process rights by being reassigned to another administrative position.

In her Brief, Appellant makes the assertion that she "lost her job as principal without receiving the protections of the quasi-due-process contract nonrenewal process because CISD and the commissioner erroneously construed principal and assistant principal to be in the same professional capacity. . . " *See* Appellant's Brief at pg. 12 (emphasis added). This claim is misleading. As discussed *supra*, administrators assigned to the positions of principal and assistant principal must hold SBEC-granted "principal" certification issued under Subchapter B of Chapter 21 of the Texas Education Code. Because an assistant principal must hold proper "principal" certification, she, like a classroom teacher or a campus principal is entitled to a Chapter 21 contract. As a holder of a Chapter 21 term contract, the assistant principal is entitled to all the due process set forth in Chapter 21 before being reassigned to a position that is outside the certified administrator's professional capacity. The Commissioner of Education and the District Court have correctly held that "principal" and "assistant principal" are both within the same professional capacity of "administrator; thus, Appellant was appropriately reassigned within her professional capacity. Appellant did not lose any due process protections because none were warranted.

### 3. The position of principal is not "unique" whereby reassignment would be prohibited.

Appellant and *Amicus* TEPSA argue that principals are "unique" and "indispensable, members of the campus community." *See* Appellant Brief, at p. 18, and *Amicus* TEPSA Brief, at ps. 4-9. Although it is true that the many principal positions, including assistant principals, may be "indispensable" to a campus community, it is equally true that a student's favorite coaches, band directors, counselors, and teachers are equally indispensable.

Like every other employee in the school district, the principal is at all times accountable to the superintendent for the performance of his or her duties. The ultimate responsibility to the parents, students, and community for what occurs on any principal's assigned campus, or for what fails to happen there, rest solely with the superintendent of schools. *See* TEX. EDUC. CODE § 21.210(d).

The truly unique position of school superintendent has been recognized by Texas courts for over a century. As early as 1900, the Texas Supreme Court addressed the question of whether a public school superintendent holds an "office" in the public school systems in Texas. *Kimbrough v. Barnett*, 93 Tex. 301, 55 S.W. 120, 121-122 (1900). Almost four decades later, this Court confirmed as "settled law" that the "position [of superintendent] was an office . . . ." *Temple Indep. Sch. Dist. v. Proctor*, 97 S.W.2d 1047, 1052 (Tex. Civ. App. - Austin 1936)

(*citing Kimbrough v. Barnett*, 93 Tex. 301, 55 S.W. 120, 121-122 (1900)). The Texas Attorney General has also acknowledged the uniqueness of the superintendent's position. *See* TEX. ATT'Y GEN. OP. NO. GA-0123 (November 2003). The Attorney General considered that the superintendent, as the "educational leader and . . . chief executive officer," has "***sole authority*** to make recommendations to the board regarding the selection of all personnel other than the superintendent," and is "responsible for, among other duties, assigning and evaluating district personnel, and initiating an employee's termination or suspension. *See* TEX. EDUC. CODE §§ 11.163(a)(1) and 11.201(d)(2)-(4) (emphasis added). The Attorney General reasoned that, "a superintendent who exercises final authority to select personnel exercises a ***sovereign function of the government*** largely independent of the school board's control." *See id.*

In contrast, the position of principal is not unique. While there is a one-to-one ratio between the number of school districts and the number of superintendents, there is no such ratio for principals. Moreover, there is no recognition that principals occupy a position similar to superintendents. To equate the two positions is to ignore that there is no other administrator in a school district like a superintendent and to ignore that, in larger school districts, there are usually several, if not multitudes, of positions that are similarly situated to the campus principal. It is the uniqueness of the superintendent's position that leads to the

restriction on reassigning him or her away from the professional capacity of superintendent. The same argument cannot plausibly be made of any other employment position within a district, including a campus principal.

As alluded to above, depending on which particular campus structure best fits the needs of a school district, a Texas school district may employ one, ten, or more than 100 principals, but, regardless of its administrative configuration, the district will inevitably employ only one superintendent. For example, the Katy Independent School District Web site identifies its sixty (60) campuses, including thirty-seven (37) elementary schools, thirteen (13) junior high schools, and ten (10) high schools. While Katy ISD employs sixty (60) principals, it employs only one superintendent of schools. This one typical large suburban/metropolitan school district example illustrates how quickly any attempted analogy between a campus principal and a district superintendent fails.

In a similar line of argument, Appellant has argued that the principal is "like a superintendent" and "one-of-a-kind." *See* Appellant Brief, pgs. 21-23. To assert that a campus principal is analogous to the superintendent is a failure to understand that the superintendent is the sole, one of a kind, chief executive officer ("CEO") of the school district. The Texas Legislature recognizes this fact and has codified it in section 11.201(a) of the Texas Education Code. A principal is, undoubtedly, a valuable administrative member of a school district's administrative staff with

some duties that are set forth in statute, but "the buck" has a place to go when the campus principal cannot handle it—the superintendent's desk. It is a misrepresentation of arguably every organizational chart in every school district in Texas for Appellant to represent to the Court that the positions of superintendent and campus principal are similarly unique.

### 4. Due Process protects no more than the status of being a governmental employee together with the "economic fruits" accompanying that position.

Appellant argues that she has a property interest in her position as "principal." *See* TEPSA *Amicus* Brief, at pg. 5-6. She does not. Due process protects no more than the status of being a governmental employee together with the "economic fruits" accompanying that position. *See Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 754 (5th Cir. 1986); 491 U.S. 701, 708 (1989).

In *Jett*, the Fifth Circuit found that, although a district employee may have had a property interest in his salary, a contract did not give him a property interest in the continuation of his specific duties. *See Jett*, 798 F.2d at 754. Specifically, the Court stated that "[w]hen a public employee has a legitimate entitlement to his employment, the due process clause may protect as 'property' no more than *the status* **of being an employee of the governmental employer** in question together with the *economic fruits* **that accompany the position**." *See id* (emphasis added).

Therefore, according to the Fifth Circuit, a school district employee has a due process protection to "no more than" (1) his employment; and (2) his salary.

The Fifth Circuit added that "[a]lthough the governmental employer may specifically create a property interest in a noneconomic benefit—such as a particular work assignment—a property interest in employment generally does not create due process property protection for such benefits. *See id.* (*citing Findeisen v. North East Indep. Sch. Dist.*, 749 F.2d 234, 240-41 & n. 3 (5th Cir. 1984) (Garwood, J., concurring)). The United States Supreme Court affirmed the Fifth Circuit decision in *Jett,* stating that "[s]ince petitioner had received both his teacher's and coach's salary after his reassignment, the change in duties did not deprive him of any state law entitlement protected by the Due Process Clause." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 708 (U.S. 1989). Appellant did not lose her government entitlement as a school administrator nor did she lose any salary as a consequence of her reassignment. Thus, no property interest was affected and no due process rights were implicated.

**C. "Professional Capacities" Have *Never* Been Limited to the Positions Listed in Section 21.201(1) of the Texas Education Code.**

Appellant would have this Court create a bright line rule that a Texas public school campus principal may only be reassigned to another campus principal position. This would require this Court to overrule a multitude of Commissioner

decisions, as discussed *supra*, and create rights never previously recognized.

Moreover, such a ruling would be inconsistent with the Act's legislative intent.

> ### 1. The Commissioner of Education has not conceded that "professional capacity" is exclusively defined by section 21.201 of the Texas Education Code.

Far from the Appellant's claim that "the Commissioner has conceded that §21.201(1) defines the term 'professional capacity' used in §21.206, as to superintendent, classroom teacher, counselor, nurse, and librarian," and that "without rationale, the commissioner has failed to include principal in that group, even though it is specifically identified in §21.201(1)," the Commissioner has actually provided a very comprehensive analysis regarding the meaning of the phrase "same professional capacity," while thoroughly referring to, and relying on, statutory, legislative, and administrative history and precedent. The Commissioner, even as far back as 1985, reasoned as follows:

> "[I]t is more reasonable to conclude that the legislature, by using the term 'same professional capacity' (instead of 'the exact same position'), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual reassignment authority. In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the teacher was assigned the previous year, as long as the position is one which the district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year. In some instances, the validity of a particular placement will be clear. For example, an administrator who does not receive the

required notice by April 1 may not be placed in the capacity of a classroom teacher; a classroom teacher may not be placed in the capacity of a counselor; a counselor may not be placed in the capacity of a nurse; a nurse may not be placed in the capacity of the librarian; etc. In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional capacity (e.g. administrator), but nevertheless, be invalid (e.g. from superintendent to assistance elementary principal). Factors to be considered in determining the validity of such a placement include, but are not necessarily limited to, differences in authority, duties, and salary."

*See Barich*, Docket No. 117-R1a-484 (Comm'r Educ. 1985). It is misleading for Appellant to suggest that the Commissioner has "conceded" that professional capacity is exclusively defined by section 21.201.

2. **The Legislative Intent is not that "Professional capacities" be limited to Section 21.201 of the Education Code.**

In 1985, when the Commissioner decided the *Barich* case – the first substantive case on the issue of "same professional capacity" – the positions of "classroom teacher" and "counselor" were listed under the definition of "teacher" in section 21.201(1)); but the positions of "nurse," "librarian" and "administrator" were not. Nonetheless, the Commissioner did not limit "professional capacities" to the positions listed in §21.201(1). Since *Barich*, the Term Contract Nonrenewal Act has been amended several times (1990, 1995, 2003, and 2011), and the legislature has met many more times than that. Although given the opportunity, the Texas Legislature has not modified the language to limit the "professional

capacit[ies]" contemplated in 21.206 to those categories of employees listed in 21.201 under the definition of "teacher."

Although Appellant argues otherwise, the professional category of "principal" is not a statutorily, regulatory, or contractually protected "professional capacity". If the Legislature would have intended for "same professional capacity" to be limited to the positions listed under the definition of "teacher," it could have made its intention clear with the many opportunities that it has had during a dozen legislative sessions over the past three decades. This fact is especially true in light of the concurrent line of Commissioner's decisions interpreting the term. In essence, the Texas Legislature has acquiesced to the Commissioner's longstanding interpretation that "same professional capacity" in the administrative context is a broader category of school district positions than simply campus principal.

**D.      A Favorable Ruling for Appellant Would Result in an Unfavorable Result for Every Public School Student in Texas.**

The public policy of the State of Texas is to provide public school districts with flexibility regarding personnel assignments in order to efficiently and effectively carryout the operations of each campus in the best interest of the district. *See Carpenter*, Docket No. 247-R3-491 (Comm'r Educ. 1993). In practice, the "best interest of the district" translates to the "best interest of the students," particularly when considering the abilities, skills, strengths, and even

weaknesses, that campus administrators will bring to the education of students at the campuses at which they are assigned or reassigned.

Because the school laws of the state presume administrative authority to reassign administrators employed by Texas public schools, Appellant's arguments attack the fundamental flexibilities that public school districts have necessarily relied on and operated under for decades. Granting the Appellant's requested relief, and overturning such longstanding policy, would result in a dramatic state-wide change to the status quo affecting every public school district in Texas, along with the education of public school students. Leading a Texas school district already presents a multitude of challenges to the superintendent. Stripping a superintendent of the authority and flexibility to appropriately reassign campus administrators to other administrative positions places a fetter on his or her ability to do what is best for students by creating circumstances wherein campus employees and students are shepherded by an administrator who is not the best person to lead the campus.

## **PRAYER**

It has long been established in Texas that public school districts have the authority and flexibility to reassign school employees, including administrators, to other positions that are within such employees' same professional capacity. School districts must be allowed to continue to reassign administrators – including

principals – appropriately to other positions within the same professional capacity in order to meet the needs of the school. A principal does not lose any property or due process rights solely as a result of being reassigned from a principal position to another administrative position, including assistant principal, because both positions are within the same professional capacity of an "administrator." Granting the Appellant's requested relief would reverse over three decades of precedent and policy, resulting in a negative state-wide change for every public school district and every public school student in Texas. Such precedent should not be lightly overturned.

Wherefore, for these reasons, TASB Legal Assistance Fund respectfully requests the Court affirm the judgment of the district court.

**UNDERWOOD LAW FIRM, P.C.**

By: _____ /s/ David P. Backus _____

David P. Backus
State Bar No. 01493870
david.backus@uwlaw.com
Ronn P. Garcia
State Bar No. 24065269
ronnie.garcia@uwlaw.com
1111 West Loop 289
Lubbock, Texas 79416
(806) 793-1711
(806) 793-1723 facsimile

ATTORNEYS FOR AMICUS CURIAE
THE TEXAS ASSOCIATION OF
SCHOOL BOARDS' LEGAL
ASSISTANCE FUND

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Texas Rule of Appellate Procedure 9.4(i)(3), that this Brief was produced on a computer using the Microsoft Word 2010 operating software and contains 7,256 words, as determined by using word-count function on such software, excluding the sections of the Brief listed in the Texas Rules of Appellate Procedure 9.4(i)(1).

_____ /s/ David P. Backus _____
**David P. Backus**

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2015, a true and correct copy of the foregoing document was forwarded to all counsel of record by e-mail, mail, and/or facsimile pursuant to the Texas Rules of Appellate Procedure 9.5 as follows:

David B. Hodgins
Thompson & Horton LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
**Facsimile (713) 583-9397**

Nichole Bunker-Henderson
Deputy Chief, Administrative Law Division
Assistant Attorney General
Office of the Texas Attorney General
P.O. Box 12548, Capitol Station
**Facsimile (512) 320-0167**

Kevin F. Lungwitz
Lungwitz & Lungwitz, P.C.
3005 S. Lamar Blvd.
Suite D-109-362
Austin Texas 78704-4785
**Facsimile (866) 739-7138**

Daniel A. Ortiz
Giana Ortiz
The Law Office of Daniel A. Ortiz
1304 W. Abram Street, Suite 100
Arlington, Texas 76013
**Facsimile (817) 861-8909**

/s/     David P. Backus
**David P. Backus**

# APPENDIX INDEX

A. **Texas Commissioner Decision:**

*Carpenter v. Wichita Falls Ind. Sch. Dist.*, Docket No. 247-R3-491 (Comm'r Educ. 1993)

B. **Texas Administrative Rules:**

19 TEX. ADMIN CODE §229.2

19 TEX. ADMIN CODE §241.1

19 TEX. ADMIN CODE §241.20

C. **Crosby Independent School District Board Policies:**

Crosby ISD Board Policy BJA (LEGAL)

Crosby ISD Board Policy DK (LOCAL)

# APPENDIX

# A

## Texas Commissioner Decision

*Carpenter v. Wichita Falls Ind. Sch. Dist.*, Docket No. 247-R3-491 (Comm'r Educ. 1993)

**DOCKET NO. 247-R3-491**

| | | |
|---|---|---|
| ROSE M. CARPENTER | § | BEFORE THE STATE |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| WICHITA FALLS INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner was employed as an administrator by the Wichita Falls Independent School District for the 1989-90 school year. Her assignment at that time was science supervisor. Petitioner appeals the denial of her grievance claiming the reassignment was in violation of Texas Education Code § 21.204(d).

A hearing on the merits of this appeal was heard on January 13, 1992, before James C. Thompson, the Hearings Examiner appointed by the State Commissioner of Education. Petitioner was represented by Mark Robinett, Attorney at Law, Austin, Texas. Respondent was represented by Roger Hepworth, Attorney at Law, Austin, Texas.

On July 20, 1993, the Hearings Examiner issued a Proposal for Decision recommending that Petitioner's appeal be denied. Exceptions and replies were timely filed and considered.

### Findings of Fact

After due consideration of the evidence and matters officially noticed, in my capacity as State Commissioner of Education, I make the following Findings of Fact:

1. At all times relevant to this appeal Petitioner was employed by the Respondent as an administrator in the Wichita Falls Independent School District. (Joint Stip.; PX-1.)

2. Both the administrator's contract for the 1989-90 school year and the administrator's contract for 1990-91 signed by Petitioner contain a clause providing that

> employee shall be subject to assignment and reassignment of positions or duties, additional duties, changes in responsibilities or work, transfers, or reclassification at any time during the contract term.

(PX-1; RX-2.)

3. In June or July of 1990, the Wichita Falls Independent School District reorganized its administrative structure. As a result of the administrative reorganization of Wichita Falls Independent School District, some of the area supervisors were reassigned to campus-based administrative positions. (Joint Stip.)

4. In July of 1990, Petitioner received notice from the Wichita Falls Independent School District that Petitioner would be reassigned to the position of Assistant High School Principal. (Joint Stip.)

5. Petitioner received no decrease in salary or benefits from her reassignment. (Joint Stip.)

6. At the time of the hearing Petitioner remained employed with the Wichita Falls Independent School District as an administrator in the position of Assistant Principal. (Joint Stip.)

7. Petitioner voiced disapproval of the administrative reorganization.

8. The Assistant Superintendent recommended that Petitioner would not be well suited to the new role as Science Support Specialist

because of a problem she had working with principals and teachers in the past.

9.	Petitioner did not apply for the position of Science Support Specialist.

10.	Petitioner's former position of Science Supervisor was among those positions abolished by the reorganization plan.

11.	Petitioner's position as Assistant Principal is an administrative position and Petitioner's prior position as Science Supervisor was an administrative position.  These positions are in the same professional capacity.  (PX-2 and RX-2.)

## DISCUSSION

The question presented by this appeal is the scope and reach of the Term Contract Nonrenewal Act, Texas Education Code section 21.204(b), in the context of the reassignment of those school district personnel coming under its protections.  Petitioner would have the Commissioner of Education hold that the phrase "same professional capacity" as used in the TCNA is either defined by or in some way informed by the definition of "teacher" found in §21.201(1) of that Act.  I do not believe the statutory language can permit of such an interpretation.  Rather, this phrase is left undefined by the statute, and therefore its meaning is a matter for interpretation by the Commissioner, in the first instance, and by the courts.  The decisions of the Commissioner (and the courts) have consistently looked to the language of the employment contract itself and attempted to give the parties the benefit of their bargain.  In this case, the contract between the parties provides that the position to which Petitioner was entitled was that of a generic "administrator."  Petitioner has not proven that hers was a

contract of adhesion, which would clearly change the result in this case. It is true that the Commissioner has held that §21.204(b) limits the right of the district to transfer a term contract teacher. Barich v. San Felipe-Del Rio C.I.S.D., Docket No. 117-R1a-484 (Comm'r Educ. May 1985). It is possible to imagine situations where the transfer clause in an employment contract would be held unenforceable under §21.204(b). However, this is not such a case. It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to the law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. The need for flexiblity in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me to be consistent with the policies of the TCNA.

## Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as State Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner of Education has jurisdiction over this appeal under Texas Education Code §11.13(a).

2. Respondent's decision to reassign Petitioner was neither arbitrary, capricious, nor unlawful.

3. Respondent's decision to reassign Petitioner was not a violation of state law.

4. Petitioner had no contractual entitlement not to be reassigned from Science Supervisor to Assistant Principal.

5. Petitioner had no property interest in the non-economic benefit of serving as Science Supervisor.

6. Petitioner's appeal should be denied.

## **O R D E R**

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as State Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DENIED.

SIGNED AND ISSUED this _____ day of _____, 199_.


_____
LIONEL R. MENO
COMMISSIONER OF EDUCATION

# APPENDIX

# B

## Texas Administrative Rules

**19 TEX. ADMIN CODE §229.2**

**19 TEX. ADMIN CODE §241.1**

**19 TEX. ADMIN CODE §241.20**

Texas Administrative Code
Title 19. Education
Part 7. State Board for Educator Certification
Chapter 229. Accountability System for Educator Preparation Programs

19 TAC § 229.2
Tex. Admin. Code tit. 19, § 229.2

§ 229.2. Definitions

Currentness

The following words and terms, when used in this chapter, shall have the following meanings, unless the context clearly indicates otherwise.

(1) Academic year--If not referring to the academic year of a particular public, private, or charter school or institution of higher education, September 1 through August 31.

(2) ACT®--The college entrance examination from ACT®.

(3) Administrator--For purposes of the surveys and information required by this chapter, an educator whose certification would entitle him or her to be assigned as a principal or assistant principal in Texas, whether or not he or she is currently working in such an assignment.

(4) Alternative certification program--An approved educator preparation program, delivered by entities described in §228.20(a) of this title (relating to Governance of Educator Preparation Programs), specifically designed as an alternative to a traditional undergraduate certification program, for individuals already holding at least a bachelor's degree.

(5) Beginning teacher--For purposes of this chapter, a classroom teacher with less than three years experience.

(6) Campus-based mentor--A certified educator assigned by the campus administrator who has completed mentor training; who guides, assists, and supports the beginning teacher; and who reports the beginning teacher's progress to that teacher's educator preparation program.

(7) Candidate--An individual who has been admitted into an educator preparation program, including an individual who has been accepted on a contingency basis; also referred to as an enrollee or participant.

(8) Certification field--Academic or career and technical content fields, special education fields, specializations, or professional fields in which an entity is approved to offer certification.

(9) Clinical teaching--A minimum 12-week, full-day or 24-week, half-day educator assignment through an educator preparation program at a public school accredited by the Texas Education Agency (TEA) or other school approved by the TEA for this purpose that may lead to completion of a standard certificate; also referred to as student teaching.

(10) Completer--According to the Higher Education Act, "A person who has met all the requirements of a state-approved educator preparation program." The term completer is no longer used to define the class of educator preparation program candidates subject to a determination of certification examination pass rate.

(11) Consecutively measured years--Consecutive years for which a group's performance is measured, excluding years in which the small group exception applies, in accordance with §229.4(g) of this title (relating to Determination of Accreditation Status).

(12) Cooperating teacher--The campus-based mentor teacher for the clinical teacher.

(13) Demographic group--Male and female, as to gender; the aggregate reporting categories established by the Higher Education Act, as to race and ethnicity. Each educator preparation program will assign a candidate to one gender demographic group and at least one Higher Education Act-established race or ethnicity group.

(14) Educator preparation program--An entity that must be approved by the State Board for Educator Certification to recommend candidates in one or more educator certification fields.

(15) Educator preparation program data--Data elements reported to meet requirements under the Texas Education Code, §21.045(b).

(16) Examination--An examination or other test required by statute or any other State Board for Educator Certification rule codified in the Texas Administrative Code, Title 19, Part 7, that governs an individual's admission to an educator preparation program, certification as an educator, continuation as an educator, or advancement as an educator.

(17) Field supervisor--A currently certified educator, hired by the educator preparation program, who preferably has advanced credentials, to observe candidates, monitor their performance, and provide constructive feedback to improve their effectiveness as educators. A campus mentor or cooperating teacher, assigned as required by §228.35(e) of this title (relating to Preparation Program Coursework and/or Training), may not also serve as a field supervisor.

(18) First year in the classroom--For purposes of the Texas Education Code, §21.045(a)(4), and its implementation in this chapter, the first year of employment as a classroom teacher.

(19) GPA--Grade point average.

(20) GRE®--Graduate Record Examinations®.

(21) Higher Education Act--Federal legislation consisting of the Higher Education Act of 1965 (20 United States Code, §1070 et seq.) and its subsequent amendments, which requires reports of educator preparation program performance data.

(22) Institutional report--Educator preparation program data reported to the United States Department of Education and the Texas Education Agency as required under the Higher Education Act.

(23) Internship--A supervised, full-time educator assignment for one full school year at a public school accredited by the Texas Education Agency (TEA) or other school approved by the TEA for this purpose that may lead to completion of a standard certificate.

(24) Pass rate--For each academic year, the percent of tests passed by candidates who have finished all educator preparation program requirements for coursework; training; and internship, clinical teaching, or practicum by the end of that academic year. For purposes of determining the pass rate, candidates shall not be excluded because the candidate has not been

recommended for certification, has not passed a certification examination, or is not considered a "completer" for purposes of the Higher Education Act or other applicable law. The pass rate is based solely on the examinations required to obtain certification in the field(s) for which the candidate serves his or her internship, clinical teaching, or practicum. Examinations not required for certification in that field or fields, whether taken before or after admission to an educator preparation program, are not included. The rate reflects a candidate's success only on the last attempt made on the examination by the end of the academic year in which the candidate finishes the coursework; training; and internship, clinical teaching, or practicum program requirements, and does not reflect any attempts made after that year. The formula for calculation of pass rate is the number of successful (i.e., passing) last attempts made by candidates who have finished the specified educator preparation program requirements divided by the total number of last attempts made by those candidates.

(25) Practicum--A supervised professional educator assignment at a public school accredited by the Texas Education Agency (TEA) or other school approved by the TEA for this purpose that is in a school setting in the particular field for which a professional certificate is sought such as superintendent, principal, school counselor, school librarian, educational diagnostician, reading specialist, and/or master teacher.

(26) SAT®--The college entrance examination from the College Board.

(27) Scaled score--A conversion of a candidate's raw score on an examination or a version of the examination to a common scale that allows for a numerical comparison between candidates.

(28) Texas Education Agency staff--Staff of the Texas Education Agency assigned by the commissioner of education to perform the State Board for Educator Certification's administrative functions and services.

**Credits**

**Source:** The provisions of this §229.2 adopted to be effective April 18, 2010, 35 TexReg 2849; amended to be effective October 26, 2014, 39 TexReg 8395.

Current through 40 Tex.Reg. No. 5986, dated September 4, 2015, as effective on or before September 11, 2015

19 TAC § 229.2, 19 TX ADC § 229.2

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Proposed Regulation

Texas Administrative Code
  Title 19. Education
    Part 7. State Board for Educator Certification
      Chapter 241. Principal Certificate

19 TAC § 241.1
Tex. Admin. Code tit. 19, §  241.1

§ 241.1. General Provisions

Currentness

(a) Due to the critical role the principal plays in campus effectiveness and student achievement, and consistent with the Texas Education Code (TEC), § 21.046(c), the rules adopted by the State Board for Educator Certification ensure that each candidate for the Principal Certificate is of the highest caliber and possesses the knowledge and skills necessary for success.

(b) As required by the TEC, § 21.046(b)(1)-(6), the standards identified in § 241.15 of this title (relating to Standards Required for the Principal Certificate) emphasize instructional leadership; administration, supervision, and communication skills; curriculum and instruction management; performance evaluation; organization; and fiscal management.

(c) An individual serving as a principal or assistant principal is expected to actively participate in professional development activities to continually update his or her knowledge and skills. Currency in best practices and research as related to both campus leadership and student learning is essential.

(d) The holder of the Principal Certificate issued under the provisions of this chapter may serve as a principal or assistant principal in a Texas public school.

**Credits**

**Source:** The provisions of this §241.1 adopted to be effective March 14, 1999, 24 TexReg 1616; amended to be effective September 2, 1999, 24 TexReg 6751; amended to be effective July 13, 2004, 29 TexReg 6646; amended to be effective October 25, 2009, 34 TexReg 7200.

Current through 40 Tex.Reg. No. 5986, dated September 4, 2015, as effective on or before September 11, 2015

19 TAC § 241.1, 19 TX ADC § 241.1

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Proposed Regulation

Texas Administrative Code

   Title 19. Education

      Part 7. State Board for Educator Certification

         Chapter 241. Principal Certificate

19 TAC § 241.20

Tex. Admin. Code tit. 19, § 241.20

§ 241.20. Requirements for the Issuance of the Standard Principal Certificate

Currentness

To be eligible to receive the standard Principal Certificate, a candidate must:

(1) successfully complete the appropriate examinations required under Chapter 230, Subchapter B, of this title (relating to Assessment of Educators);

(2) hold, at a minimum, a master's degree from an accredited institution of higher education that at the time was accredited or otherwise approved by an accrediting organization recognized by the Texas Higher Education Coordinating Board;

(3) hold a valid classroom teaching certificate;

(4) have two creditable years of teaching experience as a classroom teacher, as defined in Chapter 153, Subchapter CC, of this title (relating to Commissioner's Rules on Creditable Years of Service) and the Texas Education Code, § 5.001(2); and

(5) successfully complete a principal preparation program that meets the requirements of § 241.10 of this title (relating to Preparation Program Requirements), § 241.15 of this title (relating to Standards Required for the Principal Certificate), Chapter 227 of this title (relating to Provisions for Educator Preparation Candidates), and Chapter 228 of this title (relating to Requirements for Educator Preparation Programs).

**Credits**

**Source:** The provisions of this §241.20 adopted to be effective October 25, 2009, 34 TexReg 7200.

Current through 40 Tex.Reg. No. 5986, dated September 4, 2015, as effective on or before September 11, 2015

19 TAC § 241.20, 19 TX ADC § 241.20

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX C

# Crosby Independent School District Board Policies

*Crosby ISD Board Policy BJA (LEGAL)*

*Crosby ISD Board Policy DK (LOCAL)*

SUPERINTENDENT                                                                                              BJA
QUALIFICATIONS AND DUTIES                                                                    (LEGAL)

QUALIFICATIONS          A person may not be employed as a superintendent unless the person holds an appropriate certificate or permit. *Education Code 21.003*

DUTIES          The Superintendent is the educational leader and chief executive officer of the District. *Education Code 11.201(a)*

The duties of the Superintendent include:

1.  Assuming administrative responsibility and leadership for the planning, organization, operation, supervision, and evaluation of the education programs, services, and facilities of the District and for the annual performance appraisal of the District's staff.

2.  Except as provided by Education Code 11.202 (duties of principal) [see DK and DP], assuming administrative authority and responsibility for the assignment, supervision, and evaluation of all personnel of the District other than the Superintendent.

3.  Overseeing compliance with the standards for school facilities. [See CS]

4.  Initiating the termination or suspension of an employee or the nonrenewal of an employee's term contract. [See DF series]

5.  Managing the day-to-day operations of the District as its administrative manager, including implementing and monitoring plans, procedures, programs, and systems to achieve clearly defined and desired results in major areas of District operations.

6.  Preparing and submitting to the Board a proposed budget and administering the budget.

7.  Preparing recommendations for policies to be adopted by the Board and overseeing the implementation of adopted policies.

8.  Developing or causing to be developed appropriate administrative regulations to implement policies established by the Board.

9.  Providing leadership for the attainment and, if necessary, improvement of student performance in the District based on the state's student achievement and quality of learning indicators and other indicators as may be adopted by the Commissioner or the Board. [See AIA]

10. Organizing the District's central administration.

11. Consulting with the District-level committee. [See BQA]

12. Ensuring:

    a.   Adoption of a Student Code of Conduct [see FO] and enforcement of that Code of Conduct; and

    b.   Adoption and enforcement of other student disciplinary rules and procedures as necessary.

13. Submitting reports as required by state or federal law, rule, or regulation.

14. Providing joint leadership with the Board to ensure that the responsibilities of the Board and Superintendent team are carried out; and

15. Performing any other duties assigned by action of the Board.

*Education Code 11.201(d)*

In addition, the Superintendent shall, on a day-to-day basis, ensure the implementation of the policies created by the Board. *Education Code 11.1512(a)*

COLLABORATION
WITH THE BOARD

The Board and the Superintendent shall work together to:

1. Advocate for the high achievement of all District students;

2. Create and support connections with community organizations to provide community-wide support for the high achievement of all District students;

3. Provide educational leadership for the District, including leadership in developing the District vision statement and long-range educational plan [see AE];

4. Establish District-wide policies and annual goals that are tied directly to the District's vision statement and long-range educational plan;

5. Support the professional development of principals, teachers, and other staff; and

6. Periodically evaluate Board and Superintendent leadership, governance, and teamwork.

*Education Code 11.1512(b)*

| | |
|---|---|
| SUPERINTENDENT'S AUTHORITY | All personnel are employed subject to assignment and reassignment by the Superintendent or designee when the Superintendent determines that the assignment or reassignment is in the best interest of the District. Reassignment shall be defined as a transfer to another position, department, or facility that does not necessitate a change in the employment contract of a contract employee. Any change in an employee's contract shall be in accordance with policy DC. |
| | Any employee may request reassignment within the District to another position for which he or she is qualified. |
| CAMPUS ASSIGNMENTS | The principal's criteria for approval of campus assignments and reassignments shall be consistent with District policy regarding equal opportunity employment, and with staffing patterns approved in the District and campus plans. [See BQ series] In exercising their authority to approve assignments and reassignments, principals shall work cooperatively with the central office staff to ensure the efficient operation of the District as a whole. |
| SUPPLEMENTAL DUTIES | Noncontractual supplemental duties for which supplemental pay is received may be discontinued by either party at any time. An employee who wishes to relinquish a paid supplemental duty may do so by notifying the Superintendent or designee in writing. Paid supplemental duties are not part of the District's contractual obligation to the employee, and an employee shall hold no expectation of continuing assignment to any paid supplemental duty. |
| WORK CALENDARS AND SCHEDULES | Subject to the Board-adopted budget and compensation plan and in harmony with employment contracts, the Superintendent shall determine required work calendars for all employees. [See DC, EB] |
| | Daily time schedules for all employees shall be determined by the Superintendent or designee and principals. |